# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
                                  :
            v.                    :   No. 581 C.D. 2015
                                    :   Argued: April 13, 2016
Allen Freeman,                   :
                Appellant      :

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION BY JUDGE BROBSON**           **FILED:  June 15, 2016**

Appellant Allen Freeman (Freeman) appeals from an order of the Court of Common Pleas of Beaver County (trial court), dated March 11, 2015, in which the trial court denied Freeman's petition for return of $27,690 in cash that the Commonwealth seized from him during a traffic stop as derivative contraband and ordered the forfeiture of the cash. On appeal, Freeman contends that the Commonwealth failed to establish the required nexus between the cash and criminal activity to support statutory forfeiture of the cash. Freeman also contends that the trial court erred by failing to consider Freeman's testimony, which he contends supports his claim that he lawfully obtained and possessed the cash. For the reasons set forth below, we reverse the trial court's forfeiture decision with respect to the $8,000 found in the center console of the vehicle and the $690 found on Freeman's person. We vacate the trial court's forfeiture decision with respect to the approximately $19,000 found in the trunk of Freeman's vehicle, and remand

the matter to the trial court with direction that the trial court consider Freeman's "innocent owner" evidence.

## I. BACKGROUND

According to the trial court's findings of fact, which Freeman does not challenge on appeal, on December 14, 2014, Freeman's girlfriend, Kyahna Tucker, called the Ambridge Police Department and reported that Freeman had assaulted her in the home they shared with their child. Ms. Tucker told police that Freeman had just left the home in his Dodge Charger and had a firearm with him. Ms. Tucker also informed police that a white United States Postal Service (USPS) mailer, containing cash that Freeman planned to use to purchase marijuana from a contact in California, could be found in the trunk of the vehicle.

The Ambridge Police Department dispatched Officer Alfred Bialik to search for Freeman. In the meantime, a police officer from a neighboring jurisdiction spotted the vehicle and stopped Freeman. Officer Bialik traveled to the scene and placed Freeman under arrest. The police officers found $690 and three cellular telephones on Freeman's person. Officer Bialik also searched the area of the vehicle within Freeman's wingspan. This search turned up an envelope in the center console containing $8,000 in cash, bundled with rubber bands in $1,000 increments.

Officer Bialik and the other officers requested Freeman's permission to search the trunk based on their findings up to that point and the information provided by Ms. Tucker. Freeman acquiesced. In the trunk, police officers found a firearm, numerous boxes of Ziploc vacuum bags, a Ziploc vacuum bag sealer system, latex gloves, and a white USPS parcel matching Ms. Tucker's description. After securing the vehicle at the scene, Officer Bialik requested a K-9 unit. The

2

dog alerted the police officers to the front driver's side and passenger's side door, indicating the odor of narcotics based on the dog's exterior search of the vehicle. The vehicle was towed to the Ambridge Police Station.

The next day, the police officers secured a warrant to search the vehicle, including the USPS parcel. Within the USPS parcel, the police officers discovered a safe. Within the safe they found two stacks of vacuum-sealed money, with Bounce dryer sheets next to each stack. The parties stipulate that the total amount of money seized from Freeman's person and from within the trunk and passenger compartment of the vehicle was $27,690.[1]

Officer Bialik also examined the text messages on the three cell phones recovered from Freeman's person. The text messages revealed numerous conversations with references to types (*i.e.*, strains), amounts, and prices of marijuana. Freeman's text messages also refer to the use of the USPS to send and receive money to and from Sacramento, California. There were USPS tracking numbers for shipments between Sacramento, California, and Ambridge, Pennsylvania. The trial court refers to another text message, in which an individual with a local area code (presumably the Ambridge, Pennsylvania area), instructs Freeman to bring money to him so he can show Freeman "how to pad it." The trial court also references text messages relating to how to bundle money to keep it from "smelling."[2]

---

[1] As an aside, the $690 seized from Freeman's pocket, the $8,000 seized from the center console, and the $18,835 seized from the trunk total $27,525; however, the parties agree that $27,690 was seized from Freeman.

[2] During the hearing below, the Commonwealth presented testimony of Sergeant Tristan Wenzig of the Pennsylvania National Guard, who did an ion scan of the cash seized from Freeman and found traces of cocaine, but not marijuana. Noting the problems with an ion scan **(Footnote continued on next page…)**

3

Ultimately, the trial court concluded that the Commonwealth met its burden, albeit through circumstantial evidence, of proving by a preponderance of the evidence that the seized cash was derivative contraband and thus forfeitable under the act commonly referred to as the Controlled Substances Forfeiture Act (Drug Forfeiture Act), 42 Pa. C.S. §§ 6801-6802. Under the Drug Forfeiture Act, seized cash can be forfeited if the Commonwealth shows that the cash was

> furnished or *intended to be furnished by any person in exchange for a controlled substance* in violation of The Controlled Substance, Drug, Device and Cosmetic Act,[3] and all proceeds traceable to such an exchange.

42 Pa. C.S. § 6801(a)(6)(i)(A) (emphasis added). In reaching this conclusion, the trial court found persuasive the testimony of Ms. Tucker, who confirmed her initial report to police about Freeman's intentions for the cash. The trial court found that this evidence established "why [Freeman] was travelling with that money and what his plans were for it." (Trial Ct. Opinion at 9.) The trial court also noted that Ms. Tucker's description of the parcel in her initial report to police officers was consistent with the parcel that police officers recovered from Freeman's vehicle, apparently bolstering, in the trial court's view, the weight it gave Ms. Tucker's testimony.

The trial court also found persuasive the testimony of Officer Bialik and Agent Opsatnik from the Pennsylvania Office of Attorney General. Officer

---

**(continued…)**

discussed by this Court in *Commonwealth v. $9,000 U.S. Currency*, 8 A.3d 379 (Pa. Cmwlth. 2010), and that Tucker claimed only that Freeman was going to purchase marijuana, the trial court found the ion scan evidence irrelevant.

[3] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 to -144 (Drug Act).

4

Bialik testified that the vacuum packaging of money with dryer sheets is a "known . . . tactic to try to elude police officers and police K-9s from detection." (Reproduced Record (R.R.) 51.) Freeman stipulated on the record that Agent Opsatnik was an "experienced narcotics investigator," indeed, "a good one." (R.R. 124.) Agent Opsatnik corroborated Officer Bialik's testimony regarding the packaging of money in narcotics transactions. Agent Opsatnik testified that, in his experience, money in narcotics transactions is vacuum packed or wrapped, commonly with a dryer sheet or something else to mask the odor, out of concern that the money may have come into contact with illegal drugs. (R.R. at 125, 128-29.) In his decades of experience, Agent Opsatnik testified that he has seen this tactic employed hundreds of times. (*Id.*) Agent Opsatnik reviewed photographs taken of the seized cash and testified that the packaging of the cash was consistent with the trafficking of money for narcotics purposes. (*Id.*)

The trial court also considered the text messages as relevant for purposes of establishing the nexus to drug trafficking activities. According to the trial court, the text messages reveal a transaction network between Pennsylvania and California, of which Freeman was a part. The text messages refer to particular strains of marijuana, amounts, and prices, as well as plans for drug transactions through the mail. The trial court noted that the text messages corroborated Ms. Tucker's testimony about Freeman's plans to mail money by USPS parcel to California to purchase drugs. The text messages also discuss "padding" the money to prevent it from "smelling." The trial court also noted Freeman's use of three cell phones and used that finding as part of the totality of the circumstances in assessing whether the Commonwealth met its burden. In short, the trial court credited Ms. Tucker's testimony as well as the testimony of Officer Bialik and

5

Agent Opsatnik, considered the text messages and Freeman's use of the three cell phones, and concluded, based on the totality of the evidence, that the Commonwealth met its burden of proving a substantial nexus between the seized cash and illegal drug activity. (Trial Ct. Opinion at 11-12).)

## II. ISSUES ON APPEAL

On appeal,[4] Freeman raises only two issues. First, he contends that the Commonwealth's evidence falls short of proving a sufficient and substantial nexus between the forfeited cash and illegal drug activity. Instead, relying on *Commonwealth v. Marshall*, 698 A.2d 576 (Pa. 1997) (*Marshall*), Freeman argues that at best, the Commonwealth's evidence establishes a mere "possibility" or "suspicion" that Freeman intended to use the cash to purchase drugs. Second, and in the alternative, Freemen contends that he "established that he was lawfully entitled to the money seized, and it was not unlawfully used or possessed by him." (Freeman Br. at 6.)

## III. DISCUSSION

To make its case for a forfeiture of property, the Commonwealth's evidence must be of a quality that it demonstrates a "sufficient or substantial nexus" between the property in question and a violation of the Drug Act. *Commonwealth v. $2,523.48 U.S. Currency*, 649 A.2d 658, 660 (Pa. 1994)

---

[4] In an appeal from a forfeiture proceeding, this Court reviews whether findings of fact made by the trial court are supported by substantial evidence and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. $11,600.00 Cash, U.S. Currency*, 858 A.2d 160, 163 n.3 (Pa. Cmwlth. 2004). Our scope of review over questions of law is plenary. *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 847 n.9 (Pa. Cmwlth. 2014), *appeal granted sub nom. Commonwealth v. 1997 Chevrolet and Contents Seized from Young*, 120 A.3d 993 (Pa. 2015).

(quoting *Commonwealth v. 502-504 Gordon Street*, 607 A.2d 839, 842 (Pa. Cmwlth. 1992)). The Commonwealth carries its burden of proof by a preponderance of the evidence, which is a "more likely than not" standard. *Commonwealth v. $6,425.00 Seized From Esquilin*, 880 A.2d 523, 529 (Pa. 2005) (*Esquilin*). Circumstantial evidence can suffice, but the Commonwealth must do more than establish the "suspicion" of a nexus between cash and illegal drug trafficking. *Marshall*, 698 A.2d 576 at 579. Forfeiture cases "are fact sensitive cases," and the court determines whether a sufficient nexus has been proven based on the totality of the evidence. *Commonwealth v. Three Hundred Ten Thousand Twenty Dollars ($310,020.00)*, 894 A.2d 154, 161 (Pa. Cmwlth. 2006).

Where the Commonwealth makes a *prima facie* case for forfeiture, the claimant of the seized property can prevent its forfeiture with the innocent owner defense—*i.e.*, that he owns the cash; that he lawfully acquired it; and that it was not unlawfully used by him. 42 Pa. C.S. § 6802(j);[5] *Commonwealth v. $16,208.38 U.S. Currency Seized from Holt,* 635 A.2d 233, 238 (Pa. Cmwlth. 1993).

---

[5] Section 6802(j) of the Drug Forfeiture Act provides:

> (j)   Owner's burden of proof.—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:
>
> > (1)   That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
> >
> > (2)   That the claimant lawfully acquired the property.
> >
> > (3)   That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of

**(Footnote continued on next page…)**

7

## A. Sufficient and Substantial Nexus

In *Marshall*, the appellant sought return of cash that the court of common pleas had forfeited to the Commonwealth under the Drug Forfeiture Act. In concluding that a substantial nexus existed between the seized cash and illegal drug activity, the common pleas court relied on the following facts:

> 1) Appellant had been unemployed for 1-1/2 years prior to the arrest; 2) Appellant and the driver of the car gave inconsistent stories concerning the ownership of the money; 3) the currency was bundled in a manner consistent with drug dealing and was found between the seat cushions; 4) the drug-sniffing dog alerted on the cash; and 5) Appellant's testimony was not credible.

*Marshall*, 698 A.2d at 578-79. The Pennsylvania Supreme Court, however, found that these facts, as a matter of law, did not support the Commonwealth's burden. After noting that the Commonwealth is not required, under the law, to directly link the seized property to illegal activity, the Supreme Court, nonetheless, held that, at most, the Commonwealth established nothing "more than the suspicion of a possible nexus between" the seized property and illegal drug activity. *Id.* at 579. The court explained:

> It is undisputed that no drugs or drug paraphernalia were discovered in the car in which Appellant was riding, or on the persons of Appellant or his two companions. Moreover, Appellant gave uncontested testimony that he had never been arrested on drug charges and had no prior convictions of any kind. And, although the $3,400.00 was bundled in a way drug dealers have been known to

---

**(continued…)**

> knowledge or consent must be reasonable under the circumstances presented.

8

arrange their money, such an arrangement is equally consistent with an innocent person's attempt to simplify and promote precision in the counting of lawfully obtained funds.

The fact that the drug-sniffing dog alerted on the cash is also not dispositive of the issue. A completely innocent citizen of this Commonwealth could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past. The fact that on August 10, 1993 Appellant found himself in the possession of one, or several, such bills of currency is insufficient to sustain the Commonwealth's clearly established burden to prove at the outset that the money seized has a nexus to some unlawful activity on the part of Appellant. Even when considered in conjunction with all the other facts relied upon by the trial court in this case, the residual presence of drugs on some part of the $3,400.00 in question establishes only the possibility or the suspicion of a nexus between the money and some type of drug activity.

*Id.*

Freeman's written argument on this first issue comprises barely a page of his brief. Freeman contends:

Appellant's case mirrors the case in *Marshall*. During the hearings on the Petition to Return Seized Property Officer Bialik of the Ambridge Borough Police Department was called to testify. Under cross-examination the Officer . . . was asked:

"Q. Were there any drugs in the car?

A. No, there was no drugs in the car.

Q. Did he have any drugs on him?

A. No.

Q. Was there a weapon violation?

A. No." (R.R. 60.)

9

A canine was utilized to perform a search of the vehicle for drugs. The canine gave an alert that there might have been drugs in the vehicle but no narcotics were found. (R.R. 60-61) No drugs were found on Appellant. There were no drugs found in Mr. Freemen's (sic) vehicle. The officer did not charge the Appellant with a firearm violation. The record is void of any fact or circumstance that indicates that . . . Mr. Freemen (sic) was involved in drug activity. The Appellant's case mirror's the same facts that existed in *Marshall*, where the Pennsylvania Supreme Court found that there was no nexus between the money and drug activity.

(Freeman Br. at 8-9.)

Freeman's argument as to his first issue, then, is that there can be no sufficient and substantial nexus to support forfeiture of cash where law enforcement does not find illegal drugs in close proximity to the cash or on someone's person. Freeman also argues that there can be no forfeiture because Freeman was not charged with the crime. Both arguments, however, ignore the Pennsylvania Supreme Court's decision in *Esquilin*, wherein the court held: "Although illegal drugs are often present at the time of seizure, there is no requirement that such drugs be present; instead, circumstantial evidence may suffice to establish a party's involvement in drug activity. Furthermore, for property to be deemed forfeitable, neither a criminal prosecution nor a conviction is required." *Esquilin*, 880 A.2d at 530 (citations omitted).

Freeman next argues that this case "mirrors the same facts that existed in *Marshall*," and, therefore, demands that same result. (Appellant's Br. at 9.) Freeman, however, does not recite the numerous facts found by the trial court to support its forfeiture decision in this case. More critically, Freeman fails to challenge any of the trial court's findings of fact for lack of substantial evidentiary support in the record. It is not the role of this Court to examine the record below to

10

identify and address issues and arguments not raised by the appellant. *See Boniella v. Commonwealth*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008). Accordingly, for purposes of this appeal, the trial court's factual findings are conclusive.

At issue are three tranches of forfeited cash—(1) approximately $19,000 found in the trunk; (2) $8,000 found in the center console; and (3) $690 found on Freeman's person. To begin, we will address the approximately $19,000 in cash found in the trunk of Freeman's vehicle. The trial court relied on several facts in concluding that the Commonwealth had met its burden of showing a substantial nexus between the cash found in the trunk and the illegal drug activity. First, the trial court relied on the police report of Ms. Tucker, who informed police that Freeman intended to use cash, located in a box in a white USPS package in the trunk of his car, to engage in a drug transaction in California. Second, the trial court relied on the presence of a white USPS package in the trunk of Freeman's car matching the description provided by Ms. Tucker. Third, the trial court looked at the way the cash was packaged, particularly the fact that is was stacked, surrounded by Bounce dryer sheets, and sealed in Ziploc vacuum bags. Fourth, the trial court relied on Officer Bialik's and Agent Opsatnik's testimony that the packaging and sealing of cash in this manner, particularly the use of dryer sheets to mask from K-9 detection any trace odors of drugs from the cash, was consistent with drug trafficking. Fifth, the trial court relied on text messages recovered from Freeman's cell phone, which included California mailing addresses, references to business transactions, instructions to "pad" money and package so "they're not smelling," and references to strains of marijuana—*e.g.*, Ultra Sonja, Tahoe OG, Purple Dragon, Orange Kush, Bubba original OG, Skywalker OG.

11

Based on these findings of fact, unacknowledged and unchallenged by Freeman on appeal, the trial court did not err in finding it more likely than not that Freeman intended to use the approximately $19,000 in cash found in the trunk of his car to purchase a controlled substance, that being marijuana. The factual findings supporting a substantial nexus between the cash found in the trunk of Freeman's vehicle and drug activity are much more compelling than those found inadequate to support forfeiture in *Marshall*. Accordingly, we reject Freeman's argument that the trial court erred, as a matter of law, in finding a substantial nexus between the cash found in the trunk of his vehicle and illegal drug activity.

With respect to the other tranches of forfeited cash, however, the required substantial nexus is lacking. The trial court's opinion seems to lump together the separate tranches of cash in the analysis. Key to the trial court's substantial nexus mosaic was Ms. Tucker's testimony, alerting police to the *cash in the trunk*, which she specifically identified as cash that Freeman intended to use to purchase drugs. Ms. Tucker, however, did not alert police to the cash found on Freeman's person or the cash found in the passenger compartment of the vehicle.

The only finding by the trial court relative to these separate tranches of cash in support of the trial court's forfeiture decision is that the cash was bundled in a manner consistent with illegal drug activity. This finding, however, appears only to apply to the $8,000 (divided and bundled by rubber bands into $1,000 increments) and not the $690 found on Freeman's person. Even if the bundling finding applied to both, under *Marshall*, such a finding alone is insufficient to establish a substantial nexus between the forfeited cash and illegal drug activity. Moreover, we do not presume that once the Commonwealth establishes a substantial nexus between cash found in the trunk of a vehicle, that

same nexus attaches to all cash found within the vehicle and on the person of the driver. Even if we considered the passenger compartment of the vehicle and Freeman's person to be in "close proximity" to the USPS package found in the trunk of the vehicle, there is no presumption that all cash found in close proximity of cash intended to be furnished to purchase drugs is also intended to be furnished to purchase drugs. *Cf.* 42 Pa. C.S. § 6801(a)(6)(ii) (creating rebuttable presumption that cash found in close proximity to controlled substances are proceeds from illegal sale of controlled substances). *See also Commonwealth v. Porrino*, 96 A.3d 1132, 1142 (Pa. Cmwlth. 2014) (en banc) (rejecting argument that cash found within "close proximity" of drug paraphernalia should be presumed to be proceeds of illegal drug activity).

Here, the Commonwealth claims that the cash found on Freeman's person and in the passenger compartment of his vehicle was forfeitable under 42 Pa. C.S. § 6801(a)(6)(i)(A), because Freeman intended to furnish that particular cash in exchange for a controlled substance. There are, however, no findings by the trial court adequate to prove such a connection. Accordingly, the Commonwealth failed to prove a substantial nexus supporting forfeiture of the $8,000 found in the center console of Freeman's vehicle and the $690 found on Freeman's person.

## B. Innocent Owner Defense

Freeman's second issue on appeal is whether the trial court erred in failing to consider Freeman's "innocent owner" evidence to rebut the Commonwealth's *prima facie* case. This evidence consisted primarily of Freeman's testimony about his sources of income and how the cash found in his car could be traced to lawful income-producing activities. Freeman denied any

connection to drug activity and offered an explanation as to why the cash found in the trunk of his vehicle was vacuum packed and in a safe. Freeman could not explain why he sealed the Bounce dryer sheets with the cash. He also offered no testimony to explain the text messages relied on by the trial court.

In its opinion, the trial court concluded its analysis by holding that the Commonwealth established a nexus between the cash found in Freeman's vehicle and illegal drug trafficking. Under the law cited above, however, such a conclusion merely shifted the burden to Freeman to rebut the Commonwealth's case by proving that he was an innocent owner. Here, Freeman attempted to do so through his own testimony and through the introduction of an exhibit— Defendant's Exhibit "A". Yet the trial court's opinion omits any analysis of Freeman's evidence. We cannot presume from the trial court's silence that the trial court rejected Freeman's evidence, nor will we independently examine the weight and credibility that should be afforded Freeman's evidence. *See Page's Dep't Store v. Velardi*, 346 A.2d 556, 561 (Pa. 1975) (explaining that appellate review "should not infer from the absence of a finding on a given point that the question was resolved in favor of the party who prevailed below, for the point may have been overlooked.") Therefore, we are constrained to remand this matter to the trial court to consider, discuss, and make findings regarding Freeman's rebuttal evidence and his innocent owner defense.

## IV. CONCLUSION

For the reasons set forth above, we reverse the trial court's forfeiture decision with respect to the $8,000 found in the center console of the vehicle and the $690 found on Freeman's person. We vacate the trial court's forfeiture decision with respect to the approximately $19,000 found in the trunk of

14

Freeman's vehicle and remand the matter to the trial court with direction that the trial court consider Freeman's "innocent owner" evidence.


_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 581 C.D. 2015 |
| | : | |
| Allen Freeman, | : | |
| Appellant | : | |

**O R D E R**

AND NOW, this 15th day of June, 2016, the order of the Court of Common Pleas of Beaver County, dated March 11, 2015, denying Appellant Allen Freeman's Petition for Return of Property and forfeiting $27,690 to the Commonwealth of Pennsylvania is REVERSED, in part, and VACATED, in part. The trial court order is REVERSED with respect to the $8,690 found on Appellants' person and within the passenger compartment of his vehicle. With respect to the remaining approximately $19,000 found in the trunk of the vehicle, the order is VACATED and the matter REMANDED to the trial court for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania          :
                                      :
          v.                          :    No. 581 C.D. 2015
                                      :    Argued: April 13, 2016
Allen Freeman,                        :
              Appellant               :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: June 15, 2016

          The majority's holding that the $19,000 found in Allen Freeman's vehicle was earmarked for marijuana hangs by a slender thread: a single phone call made by Freeman's angry girlfriend, Kyahna Tucker, to police on the evening he left her, taking most of his belongings. Even setting aside the troublesome circumstances of Ms. Tucker's accusation, her statement is so devoid of content and so lacking in corroboration that it cannot support the conclusion that the cash was "intended to be furnished … in exchange for a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act."[1] 42 Pa. C.S. §680(a)(6)(i)(A). Most critical is the absence of a shred of evidence to

---

[1] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

connect Freeman's supposed marijuana purchase in California back to Pennsylvania.[2] Accordingly, I must respectfully dissent.

The act commonly referred to as the Controlled Substances Forfeiture Act (Forfeiture Act) authorizes the forfeiture of cash that is

> *furnished or intended to be furnished by any person in exchange for a controlled substance* in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

42 Pa. C.S. §6801(a)(6)(i)(A) (emphasis added).[3] The Commonwealth asserted that Freeman "intended" the $19,000 "to be furnished" in exchange for marijuana.

---

[2] I agree with the majority's reversal of the trial court's decision to forfeit the $8,000 in cash found in the center console of Allen Freeman's vehicle and the $690 in cash found in his wallet. About this cash, the Commonwealth presented no evidence whatsoever. I also agree with the majority that the trial court erred by not considering, or ruling upon, Freeman's innocent owner defense.

[3] The Forfeiture Act states in relevant part:

> (a) Forfeitures generally.--- The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
> ***
>
> (6)(i)  All of the following:
>
> > (A)  Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.
> >
> > (B)  Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa. C.S. §6801(a)(6)(i)(A), (B).

*Id.* Freeman responded that Ms. Tucker's accusation was false and that, in any case, the Commonwealth did not establish a substantial nexus between the $19,000 seized from his car and a future purchase of marijuana. At best, it raised a suspicion. As our Supreme Court instructed in *Commonwealth v. Marshall*, 698 A.2d 576, 579 (Pa. 1997), a suspicion will not support the forfeiture of a citizen's property.

No one witnessed an illegal drug transaction; no drugs or drug paraphernalia were found on Freeman or in his car; and Freeman has no criminal history of any sort, let alone one involving drugs. Ms. Tucker called the police the evening of December 14, 2014, to report her quarrel with Freeman and that in the trunk of his car there was a white United States Postal Service (USPS) box containing cash. At the forfeiture hearing, she testified as follows:

> Q. Did you tell the police what that money was for?
>
> A. Yes.
>
> Q. And what did you tell them?
>
> A. He used it to sell weed from California.
>
> Q. And did you tell them anything else about what the plans were for that money?
>
> A. I just know he was going to send it off to California.

Reproduced Record at 36 (R.R. ___). There are numerous problems with Ms. Tucker's testimony.

First, at the hearing, Ms. Tucker merely confirmed what she said to police on the evening in question. She did not confirm that what she said in her phone call was, in fact, true.

MHL-3

Second, Ms. Tucker offered no corroboration of her accusation. She did not say how she learned about Freeman's alleged plans for the cash in his trunk. She stated that he "was going to send it off to California," R.R. 36, and that she told police he was going "to sell weed from California." *Id.* But she did not offer a name or address in California or where or to whom Freeman planned to sell this "weed." She did not testify that she ever saw Freeman sell marijuana in Pennsylvania, or anywhere.

Third, Ms. Tucker's statement did not establish, as argued by the Commonwealth, that Freeman was on the verge of initiating the supposed purchase because he was on his way to the post office. It is the rare post office that has evening hours. Further, the USPS box, which contained a small safe in which the cash was secreted, was not addressed and lacked postage. It was not ready to be mailed. Freeman had plenty of time, in other words, to change his mind.[4] Crediting Ms. Tucker's testimony established, at most, an inchoate plan to exchange the cash for marijuana somewhere in the State of California.

Fourth, Ms. Tucker did not testify that her boyfriend's California vendor was going to send marijuana to Pennsylvania. For all we know, it was Freeman's "intention" to have the vendor send the marijuana to Colorado, where it is lawful to "sell weed." Ms. Tucker did not specify whether Freeman was a wholesaler or retailer, and she did not identify his market territory.

In principle, circumstantial evidence can support the findings necessary for a forfeiture. In its case in chief, however, the Commonwealth

---

[4] Ms. Tucker did not say how Freeman was going to send the cash "off to California," whether by USPS, UPS or by driving it himself. Under any of these scenarios, there was time for Freeman to decide to do something else with the cash, assuming that when he left Ms. Tucker he had an intention to purchase marijuana in California.

offered a thin slice of swiss cheese consisting of more holes than dairy product.  It is not the job of the courts to fill in the holes of the Commonwealth's case with inferences that favor the Commonwealth.  *Commonwealth v. Porrino*, 96 A.3d 1132, 1141 (Pa. Cmwlth. 2014) (holding that where circumstantial evidence can support an inference of innocent activity, there must be other evidence to rule out the innocent explanation).  Here, the Commonwealth needed to rule out the possibility that the marijuana to be purchased in California was then going to be delivered to a state where marijuana can be lawfully enjoyed.  Our Supreme Court has refused to allow circumstantial evidence to make the Commonwealth's case when that evidence is "equally consistent with [the action of] an innocent person[ ]." *Marshall*, 698 A.2d at 579.

The terms of the Forfeiture Act are to be strictly construed because forfeiture is not favored in the law.  *See United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939) (explaining that "[f]orfeitures are not favored; they should be enforced only when within both [the] letter and spirit of the law."); *Commonwealth v. $2,523.48 U.S. Currency*, 649 A.2d 658, 660-61 (Pa. 1994) ("The authorization of forfeiture by statute is to be strictly construed.").  The Forfeiture Act does not define what is meant by "intended to be furnished." However, intent is more than a subjective desire or hope.  As the Pennsylvania Superior Court has observed:

> [A] person's mind cannot be opened so that his or her intent can be observed.  In the absence of a declaration disclosing a person's intent, therefore, one "can only look to the conduct and the circumstances surrounding it to determine the mental state which occasioned it."

MHL-5

*Commonwealth v. Wright*, 433 A.2d 511, 513 (Pa. Super. 1981) (quoting *Commonwealth v. O'Searo*, 352 A.2d 30, 37 (Pa. 1976)). To forfeit cash "intended to be furnished" for a controlled substance, the evidence must offer specifics about that intent, such as the place, day and hour of the putative exchange. 42 Pa. C.S. §6801(a)(6)(i)(A). There must be temporal imminence with little chance of backing out of the deal. Ms. Tucker said nothing to indicate that Freeman's supposed purchase was imminent.

In a forfeiture proceeding, the evidence must be of a quality that it establishes a "substantial nexus" between the property and illegal drug trafficking. Although $19,000 is a large amount of cash, "[i]t is not against the law to carry cash." *Commonwealth v. $9,000 U.S. Currency*, 8 A.3d 379, 388 (Pa. Cmwlth. 2010). Likewise, it is not unlawful to put cash in a safe and then hide the safe in a USPS box to protect against theft as Freeman explained. R.R. 149. The Commonwealth has a more difficult forfeiture case to make whenever, as here, the police have not "*witnessed any suspicious activity.*" *Commonwealth v. Fontanez*, 739 A.2d 152, 155 n.4 (Pa. 1999) (emphasis added).[5] The evidentiary burden is even higher where, as here, the alleged violation of the Controlled Substance, Drug, Device and Cosmetic Act lies at an unknown time in the future.

The Commonwealth's evidence did not meet the "substantial nexus" quality standard. Ms. Tucker's accusation provided zero information about how,

---

[5] The majority correctly cites *Commonwealth v. $6,425.00 Seized From Richard Esquilin*, 880 A.2d 523, 529 (Pa. 2005), for the proposition that the Commonwealth can satisfy its burden of proof with circumstantial evidence. However, *Esquilin* involved a drug transaction that had already been completed, not one that was scheduled for some unknown point in the future.

where, when and with whom the alleged future exchange would occur.[6]   At the conclusion of the Commonwealth's case, the trial court observed that "[t]here may be some suspicion [of a drug connection] and maybe a further investigation is necessary."  R.R. 157.  Inexplicably, the trial court later reversed itself, finding Tucker's testimony sufficient to show that Freeman "intended to furnish" his cash to a California contact "in furtherance of a plot to traffic marijuana."  Trial Court op. at 14.  The trial court got it right the first time.

Simply, the Commonwealth did not make a *prima facie* case.  At best, it established a suspicion that Freeman's cash was intended to be furnished to someone in California in exchange for marijuana.  Without evidence of where the marijuana was to be sent, the Commonwealth did not show that Freeman's supposed purchase would even violate the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, a statute that does not have an extra-territorial reach.  In short, it is not necessary to rule on Freeman's defense.[7] I would reverse the trial court and order all of the $27,690 returned to Allen Freeman.

_____
MARY HANNAH LEAVITT, President Judge

Judge McCullough and Judge Wojcik join in this dissent.

_____

[6] I join Judge Wojcik's well-reasoned dissent, which astutely observes that Ms. Tucker's expressed belief about Freeman's future intent was not "corroborated" simply because her factual statement that there was cash in the trunk of Freeman's vehicle turned out to be true.

[7] Under oath, Freeman denied selling, using or possessing marijuana.  He also explained how he came to accumulate the cash and was candid about the fact that he did not report his income from his high end sneaker business to taxing authorities.  Unlike Ms. Tucker, Freeman provided substantive information and supporting documents, none of which was refuted by the Commonwealth.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    : No. 581 C.D. 2015
        v.    : Argued:  April 13, 2016
    :
Allen Freeman,    :
    :
        Appellant    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                    FILED:  June 15, 2016


I respectfully join in President Judge Leavitt's thoughtful dissenting opinion.  I write separately to emphasize that Kyahna Tucker's testimony does not constitute evidence tending to establish any uncontested fact because it lacks foundation and is speculative.  With respect to Allen Freeman's plans, Tucker did not explain, nor was she asked to explain, how she "just knew" or why she believed that Freeman intended to use the cash to purchase marijuana from California and then sell it…somewhere.  Mere speculation cannot tip the scales to render the evidence that is legally insufficient on its own sufficient to establish a *prima facie* case.  *Commonwealth v. Marshall*, 698 A.2d 576 (Pa. 1997).

The fact that Tucker's statements that an unspecified sum of money and a USPS box were in the trunk of Freeman's car proved true in no way offsets the utter lack of corroboration, and the speculative nature, of her remaining testimony. To the extent the trial court relied on such reverse-engineered corroboration to lend credibility to the entirety of her brief testimony is of no moment, because a mere expression of belief is not proof of any fact.

I fear that the majority's holding will lead to unintended consequences and mischief, as now speculation and uncorroborated testimony in furtherance thereof will hereafter establish the required nexus between property and illegal drug activity. According to the majority's logic, anyone possessing property would have that property subject to forfeiture upon another identifying the property generally, providing the situs of the property, and opining that the property is somehow involved in the drug trade.

_____
MICHAEL H. WOJCIK, Judge

President Judge Leavitt joins in this dissent.