# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
         v.    :
    :
David Herpin,    :   No. 74 C.D. 2016
         Appellant    :   Submitted: January 6, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge[1]


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                  FILED: January 4, 2018


David Herpin (Herpin) appeals from the Philadelphia County Common Pleas Court's (trial court) September 10, 2015 order granting the Commonwealth of Pennsylvania's (Commonwealth) forfeiture petition (Forfeiture Petition) and directing that Herpin's 2007 Mercedes Benz (Vehicle) and its contents be forfeited to the Commonwealth pursuant to the act commonly referred to as the Controlled Substances Forfeiture Act (Forfeiture Act).[2] There are two issues for this Court's review: (1) whether the trial court erred by granting the Commonwealth's forfeiture motion; and (2) whether the Vehicle's forfeiture constitutes an excessive fine. After review, we affirm.

---

[1] This decision was reached before the conclusion of Judge Cosgrove's service with this Court on December 31, 2017.

[2] The Forfeiture Act was codified at 42 Pa.C.S. §§ 6801-6802. Those sections were repealed by the Act of June 29, 2017, P.L. 247 (effective July 1, 2017). The Forfeiture Act is now codified at 42 Pa.C.S. §§ 5801-5808 (effective July 1, 2017). The Court herein references the earlier Forfeiture Act, as it was in effect at the time the Vehicle was forfeited.

On July 1, 2013, Herpin was arrested and charged with multiple criminal violations, including Possession with Intent to Deliver Controlled Substances (PWID) and the Criminal Use of a Communication Facility. On July 22, 2013, the Commonwealth filed the Forfeiture Petition to confiscate Herpin's Vehicle pursuant to the Forfeiture Act. On August 12, 2014, Herpin entered into a negotiated plea agreement relative to the PWID and the Criminal Use of a Communication Facility charges.[3] On July 6, 2015, the trial court held a hearing on the Forfeiture Petition, during which Herpin and Police Officer Frank Bonett (Officer Bonett) testified. Officer Bonett described his surveillance and investigation which led to Herpin's arrest. The trial court granted the Forfeiture Petition that same day. On July 13, 2015, the trial court vacated its July 6, 2015 order, and heard additional argument on July 27, 2015. On September 10, 2015, the trial court again granted the Forfeiture Petition. Herpin appealed to the Superior Court which transferred the matter to this Court.[4]

Initially,

[t]he plain language of [Section 6801(a)(4) of] **the Forfeiture Act prohibits the use of a vehicle which 'in any manner . . . facilitate**[s] **the transportation**, **sale**, **receipt**, **possession**, or concealment' **of proscribed substances** under the Drug Act.[5] 42 Pa.C.S. § 6801(a)(4). This language has been interpreted broadly so that the Commonwealth is not required to show that drugs were actually found on the vehicle, or on the driver of the vehicle, in order for the property to be forfeited. Rather, **the Commonwealth must merely establish 'a sufficient**

---

[3] The other charges were *nolle prossed*.

[4] Where the trial court grants a forfeiture petition, this Court "determine[s] 'whether the findings of fact made by the trial court are supported by competent evidence and whether the trial court abused its discretion or committed an error of law.' *Commonwealth v. Marshall*, . . . 698 A.2d 576, 578 n.2 ([Pa.] 1997)." *Commonwealth v. Neighbor's First Fed. Credit Union Check in the Amount of $76,389.27*, 134 A.3d 149, 155 n.6 (Pa. Cmwlth. 2016).

[5] The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101-780-144.

2

**or substantial nexus between the property and the prohibited activity**.' *Commonwealth v. 502-504 Gordon St*[.], . . . 607 A.2d 839, 842 ([Pa. Cmwlth.] 1992), *aff'd*, . . . 636 A.2d 626 ([Pa.] 1994).

*Strand v. Chester Police Dep't*, 687 A.2d 872, 876 (Pa. Cmwlth. 1997) (citation omitted; emphasis added).

Herpin first argues the trial court erred by granting the Commonwealth's forfeiture motion because the Commonwealth failed to show the requisite nexus between the Vehicle and the criminal activity. We disagree.

In Forfeiture Act proceedings, "[t]he Commonwealth has the burden of proving, by a preponderance of the evidence, the nexus between the crime and the property subject to forfeiture." *Commonwealth v. One 1988 Suzuki Samurai*, 589 A.2d 770, 771 n.2 (Pa. Cmwlth. 1991). "The preponderance of the evidence standard does *not* require the Commonwealth to produce evidence directly linking seized property to illegal activity." *Commonwealth v. McJett*, 811 A.2d 104, 110 (Pa. Cmwlth. 2002). Instead, our Supreme Court has held that "circumstantial evidence can be used in order to establish the requisite nexus." *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 533 (Pa. 2005); *see also Commonwealth v. $15,000 U.S. Currency*, 31 A.3d 768 (Pa. Cmwlth. 2011). "The credibility of witnesses and the weight to be accorded to the evidence produced are matters within the province of the fact finder, who is free to believe all, some or none of the evidence." *In re Return of Prop. Confiscated*, 856 A.2d 238, 249 (Pa. Cmwlth. 2004).

Recently, our Supreme Court in *Commonwealth v. 1997 Chevrolet & Contents Seized from Young (1997 Chevrolet)*, 160 A.3d 153, 191 (Pa. 2017), confirmed that as part of an excessive fine analysis, a court must conduct an

3

instrumentality determination, evaluating the nexus between the property to be forfeited and the illegal activity.[6] The Supreme Court explained:

> In making the instrumentality determination, a court should consider, *inter alia*:
>
> > (1) whether the property was uniquely important to the success of the illegal activity;
> >
> > (2) whether the use of the property was deliberate and planned or was merely incidental and fortuitous to the illegal enterprise;
> >
> > (3) whether the illegal use of the property was an isolated event or repeated;
> >
> > (4) whether the purpose of acquiring, maintaining or using the property was to carry out the offense;
> >
> > (5) whether the illegal use of the property was extensive spatially and/or temporally; and
> >
> > (6) whether the property is divisible with respect to the subject of forfeiture, allowing forfeiture of only that discrete property which has a significant relationship to the underlying offense.

*1997 Chevrolet,* 160 A.3d at 191. "When [the Commonwealth's] burden is sustained, the burden shifts to the property owner to disprove the Commonwealth's evidence or to establish a statutory defense to avoid forfeiture." *Commonwealth v. Schill*, 643 A.2d 1143, 1145 (Pa. Cmwlth. 1994). On appeal, "the evidence must be viewed in the light most favorable to the Commonwealth as the prevailing party." *Commonwealth v. $259.00 Cash U.S. Currency*, 860 A.2d 228, 232 n.8 (Pa. Cmwlth. 2004).

Here, Herpin contends that he "did not use the [V]ehicle in any of the drug transactions alleged by the Commonwealth[, and that the Commonwealth] did

---

[6] Although the Court set forth the factors to be considered in an excessive fine context, we find them instructive in determining whether the requisite nexus for forfeiture exists.

not arrest anyone in several of the transactions that were allegedly observed by the police. [Herpin] testified that he purchased the [Vehicle] with insurance money and [that he] had a job." Herpin's Amended Br. at 12-13. However, based on the evidence presented at the July 6, 2015 hearing, the trial court found the following:

> Officer Bonett was assigned to the District Attorney's Dangerous Drug Offenders Unit, which is responsible for long-term drug investigations. While assigned to this Unit in June of 2013, Officer Bonett began investigating [Herpin], aka Julio Dollars. During surveillance at 439 West Cayuga Street in Philadelphia, officers **observed [Herpin] driving [the Vehicle].** [Herpin] owned the [Vehicle] and occupied the 439 West Cayuga Street home.[FN]1 Officer Bonett showed a confidential source ('CS') a driver's license photo of [Herpin], whom [the CS] identified as Julio Dollars, his [cocaine] supplier.
>
> Around 8:30 p.m. on June 13, 2013, Officer Bonett set up surveillance on West Cayuga Street. **He observed [Herpin] arrive at that location in the [Vehicle]** and then enter the home. **Shortly after, [Herpin] exited the house, entered the driver's seat of his [Vehicle], and drove to the East Falls section of Philadelphia. Once there, [Herpin] met a male who approached [Herpin] in his [Vehicle], and they engaged in a hand-to-hand transaction through the driver's window of the [Vehicle].** [Herpin] then left the area and officers stopped the male, who **turned over a clear baggy containing 4.2 grams of cocaine.**
>
> On June 20, 2013, officers used a CS to purchase cocaine from [Herpin] at a Ride Aid. After the CS made a series of calls to [Herpin], officers observed [Herpin] exit the West Cayuga Street location and **go in his [Vehicle] to a Rite Aid located in the East Falls section of Philadelphia. The CS approached [Herpin] at the driver's side of his [Vehicle], while [Herpin] stayed in the vehicle. After an exchange of the $300[.00] buy money for drugs, the CS walked back to the officers and handed them ten grams of cocaine.**
>
> Around 9:00 p.m. on June 25, 2013, Officer Bonett observed [Herpin] driving the [Vehicle] to the Lawncrest

section of Philadelphia. Here, [Herpin] pulled over, a male came out of a house, entered the front passenger seat of [Herpin]'s [Vehicle], and exited roughly five minutes later, returning to the house. That individual was not stopped by police. [Herpin] then drove down Rising Sun Avenue in Philadelphia, where he pulled over at Rockland Street. Here, a woman got into [Herpin]'s [V]ehicle for a short period of time, got out, and they both left the area.

On July 1, 2013, **officers had a CS call [Herpin] to purchase cocaine. Officers observed [Herpin] leave work in the [Vehicle] and go to the West Cayuga Street location. [Herpin] was stopped in the [Vehicle] by Philadelphia [Police Department's Special Weapons and Tactics Unit (]SWAT[)]. Officers had search warrants for [Herpin]'s [Vehicle], the West Cayuga Street location, and the Marshall Street location. When Philadelphia SWAT stopped [Herpin] in [the V]ehicle, they recovered five clear packages that contained 3.6 grams of cocaine, a second baggie containing 4.2 grams of cocaine, two cell phones, and $1,500.00.** In the Marshall Street location, officers recovered $23,000[.00] and $12,010[.00] from two safes, a silver revolver with six live rounds and no serial number, a yellow citation and vehicle information for the [Vehicle], and mail addressed to [Herpin]. Lastly, at the West Cayuga Street location, officers recovered one clear baggy containing 20 grams of cocaine, a black handgun loaded with six live rounds with the serial number scratched off, two digital scales, two boxes of clear baggies and numerous new and unused packets, one clear baggy with white powder, a money counter, and a digital scale. Here, police also recovered two pieces of mail in [Herpin]'s name.

[Herpin] bought his [Vehicle] in the beginning of 2013 for approximately $17,000.00. [Herpin] also owns a 2002 Lexus, which his girlfriend drove. Bluebook values [Herpin]'s [Vehicle] between $12,000[.00]-$19,000[.00].

> FN 1. Investigation also showed that [Herpin] was also connected to another location, 2431 North Marshall Street.[7]

---

[7] Officer Bonett described the Marshall Street address as Herpin's mother's home, which is the address on Herpin's driver's license and the location at which the Vehicle is registered.

Trial Ct. Op. at 2-3 (emphasis added; footnote and citations omitted).

Although Herpin insists the Vehicle was not used in any of the alleged drug transactions, the trial court was tasked with making its own credibility determinations and factual findings. *In re Return of Prop. Confiscated.* Based on the evidence presented, the trial court concluded that the Vehicle was an instrumentality of Herpin's offense. It found that Herpin "used [the Vehicle] to travel to meet his customers/buyers, sold cocaine out of the driver's window of the [Vehicle] while he was sitting in it, and drug paraphernalia was recovered from [the Vehicle] during the warrant search of the [V]ehicle." Trial Ct. Op. at 5. If the trial court's findings are supported by substantial evidence, those findings are conclusive on appeal. *Commonwealth v. Freeman*, 142 A.3d 156 (Pa. Cmwlth. 2016). After a thorough review of the record, this Court concludes that the trial court's findings that Herpin used his Vehicle in the unlawful transactions are supported by Officer Bonett's testimony. These factual findings demonstrate that Herpin's uses of the Vehicle were "uniquely important to the success of the illegal [drug] activity[,]" were "deliberate" and were "repeated[.]" *1997 Chevrolet*, 160 A.3d at 191. Further, Herpin's purpose for using the Vehicle "was to carry out [his unlawful drug activity,]" and his "illegal use of the property was extensive . . . ." *Id.* Accordingly, we hold that the Commonwealth established the requisite nexus between the Vehicle and the unlawful activity.

Herpin next contends that the Vehicle's forfeiture constitutes an unconstitutional, excessive fine. We disagree. Apart from setting forth the relevant law in his brief, Herpin's excessive fine argument consists only of the following four sentences:

> In the instant matter, [Herpin] argues that the punishment was excessive in light of the crime that was committed. The [Vehicle] was a Mercedes Benz and was valued at several thousand dollars. [Herpin] was arrested for a single

7

drug transaction. The penalty of forfeiting the [Vehicle] is grossly disproportionate to the gravity of the offense and the trial court[']s decision should be reversed.

Herpin's Amended Br. at 15.

Our Supreme Court has explained:

The Eighth Amendment to the U.S. Constitution provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' U.S. Const. amend. VIII. The Eighth Amendment is made applicable to the states through the Fourteenth Amendment. This Court has held that Article I, Section 13 of the Pennsylvania Constitution is coextensive with the Eighth Amendment. In [*In re*] *King Properties*[, 635 A.2d 128 (Pa. 1993),] this Court reasoned that the 'excessive fines' provision of Article I, Section 13 of the Pennsylvania Constitution is governed by the federal treatment of the Eighth Amendment.

To determine whether the Excessive Fines Clause has been violated, a court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive. 'The first question determines whether the Eighth Amendment applies; the second determines whether the Eighth Amendment is violated.' *Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000).

It is settled law in Pennsylvania that a forfeiture effected pursuant to the Forfeiture Act is a fine and thus subject to review under the Excessive Fines Clause.

*Commonwealth v. Real Prop. & Improvements Commonly Known As 5444 Spruce St., Phila.*, 832 A.2d 396, 398-99 (Pa. 2003) (*5444 Spruce Street*) (citations and footnote omitted).

In *5444 Spruce Street*, the Pennsylvania Supreme Court considered the applicability of the United States Supreme Court's decision in *United States v. Bajakajian*, 524 U.S. 321 (1998),[8] (which applied a gross disproportionality test to an

---

[8] *Bajakajian* was superceded by statute. However, the *Bajakajian* factors are still relevant as evidenced by the Pennsylvania Supreme Court's discussion thereof in *1997 Chevrolet*.

8

*in personam* forfeiture) to a case involving "punitive civil *in rem* forfeitures, where the government has established a significant relationship between the property sought to be forfeited and the underlying criminal offense." *5444 Spruce St.,* 832 A.2d at 400. *Bajakajian's* gross proportionality test "compare[s] the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Bajakajian*, 524 U.S. at 336-37.

The *5444 Spruce Street* Court described the application of the *Bajakajian* gravity factor as follows:

> [A] court may measure the gravity of the offense [based upon several factors,] each of which is **limited to the conduct of the defendant: the penalty imposed as compared to the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and, the harm resulting from the crime charged.**

*5444 Spruce St.,* 832 A.2d at 402 (emphasis added). Our Supreme Court ultimately concluded that "*Bajakajian's* gross disproportionality test applies to all punitive forfeitures regardless of the form of the underlying proceedings." *5444 Spruce St.*, 832 A.2d at 403.

In the instant matter, the trial court evaluated the gravity of Herpin's offense by considering the three *Bajakajian* factors discussed in *5444 Spruce Street*. First, the trial court compared Herpin's 2½ to 5-year imprisonment penalty to the potential statutory maximum penalty of 10 to 20 years plus a $200,000.00 fine. The trial court acknowledged that the first *Bajakajian* factor weighed in Herpin's favor because Herpin's actual sentence represented only a small percentage of what the trial

9

court was statutorily authorized to impose.[9] With respect to the second *Bajakajian* factor, the trial court concluded that the record evidence of repeated drug sales on different days using the Vehicle demonstrated a "pattern of misbehavior[.]" *5444 Spruce St.,* 832 A.2d at 402. Finally, relative to the third *Bajakajian* factor, contemplating the resulting harm from Herpin's violation, the trial court concluded that Herpin inflicted harm on citizens who were not merely the confidential informants and police sources, but individuals who purchased drugs from him for their actual use. Based on its consideration of these factors, the trial court concluded that the gravity of Herpin's offense warranted the $15,000.00[10] Vehicle's forfeiture.

Our Supreme Court's decision in *1997 Chevrolet*, issued on May 25, 2017, significantly clarified the applicable criteria for evaluating whether a forfeiture constitutes an excessive fine:

> [F]or purposes of an Excessive Fines Clause challenge to a civil *in rem* forfeiture, a court must first assess whether the property sought to be forfeited is an instrumentality of the underlying offense. If the property is not found to be an instrumentality of the criminal conduct, the inquiry is dispositive and ends, and the forfeiture is unconstitutional. If the property is an instrumentality, the inquiry continues to the proportionality prong and an assessment of whether the value of the property sought to be forfeited is grossly disproportional to the gravity of the underlying offense. If it is grossly disproportional, the forfeiture is unconstitutional.

*1997 Chevrolet,* 160 A.3d at 191.

---

[9] Notwithstanding, the trial court explained that Herpin's 5-year sentence is significant, and the lack of an accompanying fine is not unusual in Philadelphia since "[d]efendants seldom have the resources to pay these fines[.]" Trial Ct. Op. at 7.

[10] The trial court explained that it estimated the amount of the forfeiture at $15,000.00 because Herpin purchased the vehicle for $17,000.00, and its current value was between $12,000.00 and $19,000.00.

In addition to the instrumentality test discussed, *supra*, the Supreme Court described the factors to be considered in valuing the property and weighing the gravity of the offense:

> The factors, among others, to be considered in assessing the value of the property are:
>
> (1) the fair market value of the property;
>
> (2) the subjective value of the property taking into account whether the property is a family residence or if the property is essential to the owner's livelihood;
>
> (3) the harm forfeiture would bring to the owner or innocent third parties; and
>
> (4) whether the forfeiture would deprive the property owner of his or her livelihood.
>
> The factors to be considered in gauging the gravity of the offense include:
>
> (1) the nature of the underlying offense;
>
> (2) the relation of the violation of the offense to any other illegal activity and whether the offender fit into the class of persons for whom the offense was designed should be considered;
>
> (3) the maximum authorized penalty as compared to the actual penalty imposed upon the criminal offender;
>
> (4) the regularity of the criminal conduct—whether the illegal acts were isolated or frequent, constituting a pattern of misbehavior;
>
> (5) the actual harm resulting from the crime charged, beyond a generalized harm to society; and
>
> (6) the culpability of the property owner.

*1997 Chevrolet,* 160 A.3d at 192.

At the time the trial court rendered its decision in the instant matter, the Supreme Court had not issued its decision in *1997 Chevrolet* specifying the elements

to be considered in assessing whether a fine is excessive. Thus, based on the record evidence and the trial court's factual findings which are supported by substantial evidence, we decide whether the fine herein is excessive in light of *1997 Chevrolet*.

With respect to the instrumentality determination, as addressed *infra*, the evidence established that the Vehicle was important to the success of the illegal activity because it was used in Herpin's illegal drug activities as a method for transporting Herpin to conduct drug transactions and for the delivery of the illegal drugs. In fact, Herpin was observed selling drugs through the Vehicle's window. Accordingly, the Vehicle's use was not "merely incidental and fortuitous to the illegal enterprise[.]" *Id.* at 191. Further, record evidence reflects that Herpin used the vehicle on repeated occasions to conduct the illegal activities during the approximate one-month surveillance period.

Regarding the property valuation, Herpin's counsel represented that the fair market value of the property was between $12,000.00 and $19,000.00, and the trial court valued the Vehicle at $15,000.00. Further, Herpin's ownership of another vehicle mitigates his loss of the Vehicle's use. Herpin did not offer any evidence to demonstrate that innocent third parties would be harmed by the forfeiture.[11] In addition, despite Herpin's testimony that he worked as a car salesman from 2005 until the date of his arrest, there is no record evidence that he is currently employed and/or that the Vehicle's forfeiture would deprive him of his livelihood.

Relative to the gravity of the offense, Herpin was convicted of PWID and the Criminal Use of a Communication Facility. He received a 2½ to 5-year imprisonment penalty in contrast to the potential statutory maximum penalty of 10 to 20 years plus a $200,000.00 fine. Notwithstanding, this Court agrees with the trial

---

[11] Herpin testified that his girlfriend and children use the other automobile titled in his name. He did not testify that his loss of the Vehicle would harm them. Herpin further stated that his mother owned a vehicle.

court that Herpin's 5-year sentence is significant. He was observed repeatedly engaging in illegal drug activity, specifically, selling illegal drugs to private citizens, in addition to the confidential informants. Herpin's conduct directly harmed those private citizens, and required the expenditure of police resources in numerous areas, including conducting the investigation, performing surveillance, using confidential informants, and executing the searches of Herpin's residences.[12] Finally, Herpin, the Vehicle owner, was fully and directly culpable for the illegal activity.

The record evidence clearly reflects that Herpin engaged in repeated, unlawful and harmful behavior, negatively affecting both individual citizens to whom he sold illegal drugs, and the Police Department required to expend resources to address his unlawful activities. Thus, the gravity of his offense was significant. Herpin's Vehicle was valued by the trial court at $15,000.00. Given that Herpin owns another vehicle and the loss of the Vehicle would not leave him without transportation, that there is no evidence that innocent third parties would be harmed by the forfeiture, or that the Vehicle's forfeiture would deprive him of his livelihood, we conclude that "the value of the property sought to be forfeited is [not] grossly disproportional to the gravity of [Herpin's] underlying offense." *1997 Chevrolet,* 160 A.3d at 191. Under these circumstances, the trial court properly concluded that the Vehicle's forfeiture does not constitute an unconstitutional, excessive fine.

---

[12] It is undisputed that drug addiction is an epidemic. Its effects on individual users and its consequences on society are dramatic and costly.

13

For all of the above reasons, the trial court's order is affirmed.[13]

_____
ANNE E. COVEY, Judge

---

[13] The Dissent contends "it is not for [this Court] to now sift through the record and determine whether the strictures of [*1997 Chevrolet*] were met[,]" and thus, this Court should remand the matter to the trial court so that it may develop the record consistent with the factors described in *1997 Chevrolet.* Dissenting Op. at 1. In *1997 Chevrolet*, the Supreme Court clarified the law on excessive fines. Therein, the Court remanded not for additional hearings, but for reconsideration of the trial court's flawed analysis, given the Supreme Court's clarification of the relevant factors. A remand is not necessary in the instant matter. "Whether a fine is excessive under our Constitution is a question of law[.]" *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014). "[I]t is well settled that this Court may affirm the trial court's order on any basis appearing in the record." *Victoria Gardens Condo. Ass'n v. Kennett Twp.*, 23 A.3d 1098, 1103 n.10 (Pa. Cmwlth. 2011). Further, "[w]here, as here, an issue may be resolved as a matter of law based on the existing record, a remand is unnecessary." *41 Valley Assocs. v. Bd. of Supervisors of London Grove Twp.*, 882 A.2d 5, 17 (Pa. Cmwlth. 2005), *appeal discontinued*, (Pa., No. 60 MAP 2006, filed March 21, 2007). This Court reviewed the record evidence and the trial court's factual findings, concludes that there was sufficient record evidence to address the *1997 Chevrolet* criteria, and rules that the trial court's rationale was consistent therewith.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
:
        v.                  :
:
David Herpin,              :     No. 74 C.D. 2016
              Appellant     :

## O R D E R

AND NOW, this 4th day of January, 2018, the Philadelphia County Common Pleas Court's September 10, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania   :
                                 :
           v.                       :
                                 :
David Herpin,                     :   No. 74 C.D. 2016
           Appellant       :   Submitted: January 6, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                FILED: January 4, 2018


       Although I find the Majority opinion well-reasoned, I must dissent. The trial court conducted several hearings in this matter and issued its decision granting forfeiture of the vehicle in question in 2015. Two years later, the Supreme Court issued its opinion in *Commonwealth v. 1997 Chevrolet & Contents Seized from Young (1997 Chevrolet),* 160 A.3 153 (Pa. 2017) outlining the detailed analysis which a trial court must apply to questions such as those posed in this case. As the trial court, obviously, did not have the benefit of *1997 Chevrolet's* guidance, it is not for us to now sift through the record and determine whether the strictures of that holding were met. This is especially so given that counsel below did not have the opportunity to argue whether the facts of this case fit within those strictures. The

better course would be to remand this matter for development of a record at the trial level consistent with the Supreme Court's most recent directive.[1]

_____
JOSEPH M. COSGROVE, Judge

---

[1] The Majority addresses this dissent in footnote 13, suggesting that despite the Supreme Court's holding in *1997 Chevrolet*, remand in this matter is not necessary. I agree with the Majority that questions of law may sometimes be decided on the record presented, but that is not the appropriate step in this case. What the Majority attempts to do is shoehorn the trial court's analysis into the *1997 Chevrolet* Court's mandate, something which is unwise and misdirected since the trial court did not have the benefit of that decision when this matter was before it.