832 A.2d 396

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**The REAL PROPERTY AND IMPROVEMENTS COMMONLY KNOWN AS 5444 SPRUCE STREET, PHILADELPHIA, PA and Elizabeth A. Lewis, Appellants.**

Supreme Court of Pennsylvania.

Argued April 9, 2003.

Decided Sept. 24, 2003.

161, 595 A.2d 1135, 1139 (1991) (where resolution of first issue dispositive, no reason to address remaining issues).

424

James Andrew Keller, Nicholas J. Nastasi, Philadelphia, for Elizabeth A. Lewis, Appellant.

Hugh J. Burns, Jonathan M. Levy, Matthew Kent Perks, Philadelphia, for the Com. of PA, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

JUSTICE LAMB.

In this appeal we are asked to consider the forfeiture of a house in Philadelphia in light of the United States Supreme Court's holding in *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). For the reasons outlined below, we reverse the order of the Commonwealth Court and remand the case to the trial court to establish the value of the house forfeited.

On February 20, 1995, police made an undercover buy of crack cocaine and marijuana at 5444 Spruce Street, Philadelphia, which was owned by Elizabeth Lewis, who had lived in the house since 1962. The next day, police executed a search

warrant at the first floor apartment at 5444 Spruce Street and found five packets of crack cocaine in a purse in the living room and 11 packets of marijuana and $20 cash in a cup in the kitchen.

On March 8, 1995, the court of common pleas granted a Commonwealth petition to forfeit 5444 Spruce Street under the Controlled Substances Forfeitures Act (Forfeiture Act), 42 Pa.C.S. § 6801.[1] On October 3, 1995, Elizabeth Lewis pled guilty to a single charge of possession with intent to deliver[2] and was sentenced to two years' probation.

The value of the drugs involved in Lewis's guilty plea was less than $80. None of the usual trappings of drug dealing—scales, paper, cutting agents, sales records—were found during the search of Lewis's home.

A forfeiture trial was held September 25 and 26, 1996, with evidence from: the police officers who conducted the search of 5444 Spruce; Tarik Chapman,[3] who testified that as a juvenile he and others purchased drugs at 5444 Spruce Street; a juvenile case worker who testified that no deal had been made with Chapman in return for his testimony; and, Lewis, who testified that she pled guilty solely to protect her daughter who was the actual drug dealer. The trial court granted the Commonwealth's petition to forfeit.

1. § 6801. Loss of property rights to Commonwealth
   (a) **Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
   . . .
   (C) Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, and including any right, title and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

2. 35 P.S. § 780–113(30).

3. The police were led to Chapman when they found, during the February, 1995 search, a subpoena in Lewis's purse commanding her to appear to testify at a juvenile hearing for Chapman. In December, 1994, Chapman had drawn a gun on Lewis at 5444 Spruce Street.

Lewis appealed the forfeiture to the Commonwealth Court which remanded the case on February 29, 2000, because the trial court had failed to apply the clear and convincing burden of proof, which is required when a forfeiture is challenged as an excessive fine, citing *In re King Properties*, 535 Pa. 321, 635 A.2d 128, 133 (1993) ("[I]t shall be the Commonwealth's burden to establish by clear and convincing evidence that the criminal conduct in question is not a onetime occurrence."). On remand, the trial court affirmed the forfeiture, finding the evidence was clear and convincing that there was a pattern of drug dealing at 5444 Spruce Street. Lewis again appealed.

The Commonwealth Court again affirmed on December 20, 2001, this time relying on *Bajakajian*, which the United States Supreme Court had decided in 1998, after the hearing in this case was conducted. This Court granted allocatur to consider whether the forfeiture of 5444 Spruce Street violates the Excessive Fines Clause as construed by *Bajakajian*.

■■■ An appellate court's scope of review in an appeal from a forfeiture proceeding is limited to examining whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. 648 West Mayfield Street*, 819 A.2d 1226, 1227 (Pa.Cmwlth. 2003). Because the instant appeal hinges upon a question of law, the standard of review is plenary. *Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271, 278 (2002).

Lewis challenges the forfeiture of 5444 Spruce Street as violative of both the U.S. and Pennsylvania Constitutions. The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment is made applicable to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). This Court has held that Article I, Section 13[4] of

4. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. I, § 13.

the Pennsylvania Constitution is coextensive with the Eighth Amendment. *Jackson v. Hendrick*, 509 Pa. 456, 503 A.2d 400, 404 (1986) (considering whether prisoner double celling implicates the Eighth Amendment) (citing *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) (rights secured by the Pennsylvania prohibition against cruel punishments are coextensive with those secured by the Eighth and Fourteenth Amendments)); *see also Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 209 (1997) (Eighth Amendment forbids only those sentences which are grossly disproportionate). In *King Properties* this Court reasoned that the "excessive fines" provision of Article I, Section 13 of the Pennsylvania Constitution is governed by the federal treatment of the Eighth Amendment. *King Properties*, 635 A.2d at 131 (relying on *Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)).

■ To determine whether the Excessive Fines Clause has been violated, a court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive. "The first question determines whether the Eighth Amendment applies; the second determines whether the Eighth Amendment is violated." *Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir.2000).

■ It is settled law in Pennsylvania that a forfeiture effected pursuant to the Forfeiture Act is a fine and thus subject to review under the Excessive Fines Clause. *King Properties*, 635 A.2d at 131 (holding that the application of the Forfeiture Act was at least in part punitive). *See also Commonwealth v. All That Certain Parcel and Lot of Land Located at 4029 Beale Ave., Altoona, Blair County*, 545 Pa. 172, 680 A.2d 1128, 1130 (1996).

In *King Properties*, this Court, interpreting *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), held that "in determining whether a forfeiture is an excessive fine ... the inquiry does not concern the value of the thing forfeited, but the relationship of the offense to the property

which is forfeited." *King Properties,* 635 A.2d at 133. This Court went on to hold that "[i]f the forfeited property was significantly used in the commission of the offense, the item may be forfeited regardless of its value." *Id.*

After *King Properties,* this Court did not consider the value of the property seized to the offense committed under the reasoning which this court quoted in *King Properties* that:

Scales used to measure out unlawful drug sales, for example, are confiscable whether made of the purest gold or the basest metal. But an in rem forfeiture goes beyond the traditional limits that the Eight Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense. . . .

*King Properties* at 132 n. 10 (citing *Austin,* 509 U.S. at 627, 113 S.Ct. 2801 (Scalia, J., concurring)).

Since *King Properties,* this Court has upheld the forfeiture of property significantly related to the criminal offense. In *Commonwealth v. 5043 Anderson Road, Buckingham Tp., Bucks County,* 556 Pa. 335, 728 A.2d 907, 908 (1999), this Court limited the forfeiture to the property directly related to the criminal activity and excluded 22 acres deemed unrelated. In *Commonwealth v. Wingait Farms,* 547 Pa. 332, 690 A.2d 222 (1997), this Court relied on *King Properties* to hold that a "constitutionally 'excessive' forfeiture, therefore, would be one in which the property was not significantly utilized in the commission of the drug-related offense." *Wingait Farms,* 690 A.2d at 227. *See also Commonwealth v. Schill,* 164 Pa. Cmwlth. 594, 643 A.2d 1143, 1144 (1994) (upholding the forfeiture of a house in Radnor Township for the sale of .25 grams of cocaine to an undercover police officer in the house in question); *Commonwealth v. $23,320.00 U.S. Currency,* 733 A.2d 693, 699 (Pa.Cmwlth.1999) (upholding forfeiture under *Bajakajian* because the currency either represented the proceeds of a drug violation or was intended to be used as such).

When, however, the property forfeited was not significantly related to the criminal activity, this Court has reversed the forfeiture. In *4029 Beale Ave.,* this Court held that the

Commonwealth did not establish a significant relationship between the drug transactions and the property forfeited. *4029 Beale Ave.*, 680 A.2d at 1130; *see also Commonwealth v. One (1) 1993 Pontiac Trans AM*, 809 A.2d 444, 445 (Pa. Cmwlth.2002) (forfeiture unreasonable when the drug involved was marijuana with a total weight of 6.68 grams; forfeiture of the vehicle was grossly disproportionate to the gravity of the offense) [5]; *Commonwealth v. $26,556.00 Seized From Polidoro*, 672 A.2d 389, 393 (Pa.Cmwlth.1996)(Commonwealth failed to prove nexus between weapons and cash and illegal drug activities).

This Court is here confronted with an issue that was not squarely before the U.S. Supreme Court in *Bajakajian*, which was an *in personam* forfeiture, namely, whether the gross disproportionality test adopted therein applies to punitive civil *in rem* forfeitures, where the government has established a significant relationship between the property sought to be forfeited and the underlying criminal offense.[6] This question is of particular significance given this Court's holding in *King Properties.*

*Bajakajian* informs our analysis of whether a fine is excessive. In *Bajakajian*, the defendant attempted to leave the country with $357,144 in United States currency in violation of 18 U.S.C. § 982, which requires reporting the removal of more than $10,000 in currency and provides that a person in violation shall forfeit to the Government "any property ... involved in such offense." 18 U.S.C. § 982(a)(1); *Bajakajian*, 524 U.S. at 324, 118 S.Ct. 2028. The funds were seized and the defendant taken into custody. *Id.* at 325, 118 S.Ct. 2028. At a bench trial on the forfeiture of the entire amount, the court found the money was not the proceeds of crime, and that it was being transported to pay a lawful debt; but, the court held the entire amount was subject to forfeit as being involved

---

**5.** Even though *Pontiac Trans AM* was decided after *Bajakajian*, the Commonwealth Court did not apply *Bajakajian*.

**6.** *Bajakajian*, unlike the present case, involved an *in personam*, criminal forfeiture. *See generally Bajakajian*, 524 U.S. at 329–34, 118 S.Ct. 2028 (analyzing the historical differences between traditional *in rem* forfeitures and *in personam*, criminal forfeitures).

in the violation of 18 U.S.C. § 982. *Id.* at 325–26, 118 S.Ct. 2028. The trial court found the forfeiture of $357,144 as "extraordinarily harsh" and "grossly disproportionate" to the offense which carried a maximum fine under the federal sentencing guidelines of $5,000. *Id.* at 326, 118 S.Ct. 2028. Instead the court imposed a fine of $15,000 to "make up for what I think a reasonable fine should be." *Id.* at 326, 118 S.Ct. 2028. The government appealed, first to the Ninth Circuit which affirmed, and then to the U.S. Supreme Court, which also affirmed.

The Ninth Circuit examined the constitutional excessiveness of the full $357,144 forfeiture, which the government sought, using a two-factor test: "The property forfeited must be an 'instrumentality' of the crime committed, and the value of the property must be proportional to the culpability of the owner." *United States v. Bajakajian,* 84 F.3d 334, 336 (9th Cir.1996). The Ninth Circuit held that a forfeiture for currency reporting offenses could never withstand Eighth Amendment scrutiny, as currency is not an instrumentality of the crime of failure to report; the gravamen of the crime is the withholding of information, not the possession or transportation of the currency. *Bajakajian,* 84 F.3d at 337.

The Supreme Court in *Bajakajian* rejected the two-part analysis applied by the Ninth Circuit, instead opting for a pure proportionality test to weigh the excessiveness of a fine under the Eighth Amendment. *Bajakajian,* 524 U.S. at 336–37, 118 S.Ct. 2028. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334, 118 S.Ct. 2028.

The Court's analysis in *Bajakajian* begins at the same point this Court's reasoning began in *King Properties,* determining on the basis of *Austin,* 509 U.S. at 609–10, 113 S.Ct. 2801, that forfeitures are fines for Eighth Amendment purposes if they constitute punishment for an offense whether the action is characterized as one *in rem* or *in personam.* The next question the Court considered was whether as a fine, the

forfeiture of $357,144 was excessive. Relying again on *Austin*, the Court held that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028.

In *Bajakajian*, the Court further held "that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028. In judging the gravity of the offense, the Court placed its primary emphasis on the culpability of Bajakajian himself rather than on the severity of the crime in the abstract. The Court noted that the crime committed by Bajakajian was "solely a reporting offense." *Id.* at 323, 118 S.Ct. 2028.

The Court directed the trial and appeals courts to "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 336–37, 118 S.Ct. 2028.

The dissent in *Bajakajian* argued that the majority mistakenly equated an excessive fine with punishment and would have held that the forfeiture was not punishment but remedial, designed to reimburse the Government for investigation and enforcement expenses. *Id.* at 347, 118 S.Ct. 2028 (Kennedy, J., dissenting.) The dissent argued the majority disregards Congress's finding that smuggling cash is a serious crime and "Congress made a considered judgment in setting the penalty." *Id.* at 354, 118 S.Ct. 2028 (Kennedy, J., dissenting.)

In its opinion in this case, the Commonwealth Court provided the following analysis under *Bajakajian:*

Applying *Bajakajian* to the forfeiture of 5444 Spruce Street, we conclude that the forfeiture is not grossly disproportional to the offense.... Drug trafficking is a very serious crime.... Lewis' crime endangered the neighborhood and the harm caused to society is self-evident. Her admitted drug trafficking exacted a heavy toll from govern-

ment resources and has wide ranging effects that weigh in favor of the forfeiture of her house.

*Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 787 A.2d 1117, 1121–22 (Pa.Cmwlth.2001).

The Commonwealth Court appears to have used the analytical framework which became the dissent in *Bajakajian:* that the excessiveness of the fine may be weighed against the cost to society of the traffic in illegal drugs.

■ The majority in *Bajakajian*, however, requires that, in cases where a punitive forfeiture is involved, the court "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Bajakajian*, 524 U.S. at 336–37, 118 S.Ct. 2028.

The Court enumerated factors by which a court may measure the gravity of the offense, each of which is limited to the conduct of the defendant: the penalty imposed as compared to the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and, the harm resulting from the crime charged. *Id.* at 338–39, 118 S.Ct. 2028.[7]

**7.** Other jurisdictions which have applied *Bajakajian* have considered factors beyond the monetary value of the property seized to determine whether the forfeitures were excessive fines. We do not here decide which approach is appropriate because without a value for the Lewis house we do not know yet whether the forfeiture meets the threshold question of whether the forfeiture is grossly disproportionate, nor has the question undergone the sharpening and annealing process of litigation in the lower courts.

Three jurisdictions have applied a multi-faceted measuring of the property forfeited "to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028. *See e.g. United States v. 3814 NW Thurman Street, Portland, Or., A Tract of Real Property*, 164 F.3d 1191 (9th Cir.1999) (considering the culpability of the offender, other penalties and the extent of the harm caused); *Wilson v. Commissioner of Revenue*, 656 N.W.2d 547, 555 (Minn.2003) (same); *United States v. Wagoner County Real Estate*, 278 F.3d 1091, 1101 (10th Cir.2002)(considering the benefit to the defendant, the value of the forfeiture and the connection to the crime).

■ In this case, the Commonwealth Court in its analysis gave lip service to the requirements of *Bajakajian* but could not measure the gravity of the defendant's offense against the value of the property forfeited because the record contained no information about the value of the forfeit property. In this case, no testimony was offered regarding the value of 5444 Spruce Street. Unless and until the value of 5444 Spruce Street is established, the proportionality of the fine to Lewis's offense cannot be established. ·:

Other jurisdictions compare the value of the property to a subjective estimation of the gravity of the offense. *See e.g. Ex parte Kelley*, 766 So.2d 837, 840 (Ala.1999) (forfeiting a $30,000 Pontiac Grand Prix excessive under the *Bajakajian* standard when four tablets of the controlled substance aminorex and 6.2 grams of marijuana had been found in the automobile); *State ex rel. Utah Air Quality Bd. v. Truman Mortensen Family Trust*, 8 P.3d 266, 274 (Utah 2000) (fine of $23,000 not grossly disproportionate to violations of air quality regulations regarding asbestos removal); *State v. Klawonn*, 609 N.W.2d 515, 518 (Iowa 2000) ($150,000 fine for victim restitution was not excessive in an involuntary manslaughter case); *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir.1999) (forfeiting $4 million in assets of a company which bribed the highest ranking law enforcement officer in the parish, manipulated financial accounts, and laundered money was not grossly disproportionate); *United States v. Real Property Known and Numbered as 415 East Mitchell Ave., Cincinnati, Ohio*, 149 F.3d 472, 478 (6th Cir.1998) (forfeiting a home valued at $220,000 was not disproportionate for a significant marijuana cultivation operation).

A more objective standard is found in the jurisdictions which look first to the legislative body which has specified the maximum permissible fine for a given offense, holding that if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional. *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir.1999) (upholding fine of $500,000 for dishonest mortgage brokers); *United States v. Newsome*, 322 F.3d 328, 342 (4th Cir.2003) (upholding a restitution order of almost $250,000 when the fine could have been twice as large); *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir.2001) (forfeiting a $750,000 property is not excessive when the potential fine was $4 million); *United States v. Moyer*, 313 F.3d 1082, 1086 (8th Cir.2002) (forfeiture half the amount of the permissible fine is "presumptively not excessive."); *United States v. Dicter*, 198 F.3d 1284, 1292 (11th Cir.1999) (same). A minority of jurisdictions, to date, have considered the effect of the forfeiture on the defendant. *See e.g. State v. Real Property at 633 East 640 North, Orem, Utah*, 994 P.2d 1254, 1257–59 (Utah 2000). That approach has been specifically rejected in *State v.*

We hold today that *Bajakajian*'s gross disproportionality test applies to all punitive forfeitures regardless of the form of the underlying proceedings.[8]  To the extent that *King Properties* holds otherwise, it is overruled.  The order of the Commonwealth Court is reversed and the case is remanded to the trial court to determine the value of 5444 Spruce Street, which then must be weighed against the seriousness of Lewis's offense in light of *Bajakajian.*

*Izzolena,* 609 N.W.2d 541, 551 (Iowa 2000), and *817 N.E. 29th Drive, Wilton Manors,* 175 F.3d at 1311.

8.  *See United States v. Ahmad,* 213 F.3d 805, 815 (4th Cir.) ("Although the Supreme Court has not yet expressly so held, we believe that Bajakajian's 'grossly disproportional' analysis applies when determining whether any punitive forfeiture—civil or criminal—is excessive."), *cert. denied,* 531 U.S. 1014, 121 S.Ct. 573, 148 L.Ed.2d 490 (2000).