IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 480 C.D. 2022 |
| | : | Submitted: April 28, 2023 |
| Bryan Neely, | : | |
| | : | |
| Appellant | : | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: March 25, 2024

Bryan Neely (Landowner) appeals from the order of the Philadelphia County Court of Common Pleas (trial court) dated April 19, 2022, that fined Landowner $113,800 for violations of The Philadelphia (City) Code of General Ordinances (Code).[1] This appeal returns to us after remand. After careful review, we affirm.

In *City of Philadelphia v. Neely* (Pa. Cmwlth., No. 1293 C.D. 2019, filed August 30, 2021) (*Neely I*), Landowner sought review of the July 31, 2019 order of the trial court that denied his petition to open the May 14, 2019 default judgment entered in favor of the City which imposed a $1,138,000 fine against him. The default judgment followed Landowner's failure to respond to a complaint filed

---

[1] Philadelphia, Pa., Code of General Ordinances (Code) §§1-101 - 22-1409 (2020).

against him by the City alleging violations of the Code on Landowner's property located at 1261 Point Breeze Avenue, Philadelphia, Pennsylvania (the Premises).[2] Specifically, we summarized the facts of the case as follows.

> In April 2017, the Philadelphia Department of Licenses and Inspections (Department) issued [Landowner] a notice of violation, informing him that the Premises had been declared unsafe pursuant to Section PM-108.1 of the Code[] and that he was required to repair or demolish the structure within 30 days. Complaint, Exhibit A, Final Warning/Unsafe Building, 4/20/17 (Notice) at 1 []. The Notice advised [Landowner] as follows:
>
>> Fines shall be imposed from 04/20/17 and shall be assessed in the amount of $150 to $2000 per violation each and every day the violation remains uncorrected.
>>
>> Your failure to correct the violations may result in the revocation or suspension of certain licenses and permits.
>>
>> Your failure to correct the violations may also result in the City filing a legal action against you to obtain compliance, an injunction, and the imposition of fees and fines.
>
> Notice at 1-2 []. [Landowner] did not correct the alleged violation.

---

[2] In considering the present appeal, it is appropriate for this Court to take judicial notice of our prior memorandum opinion and order in *Neely I*. *See, e.g.*, Pa.R.E. 201(b)(2) (permitting courts to take judicial notice of facts that may be "determined from sources whose accuracy cannot reasonably be questioned"); *Moss v. SCI-Mahanoy Superintendent Pennsylvania Board of Probation and Parole*, 194 A.3d 1130, 1137 n.11 (Pa. Cmwlth. 2018) ("[T]his Court may take judicial notice of information contained in the publicly available docket of [the underlying proceedings]," and "'[i]t is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings . . . where, as here, the other proceedings involve the same parties.'") (citations omitted).

2

In June 2018, the Department issued [Landowner] another warning (Final Warning) deeming the Premises unsafe pursuant to Section PM-108.1.4 of the Code.[] Complaint, Exhibit B, Final Warning/Unsafe Building, 4/20/17 (Final Warning) at 1 []. The Department directed [Landowner] to obtain all permits required by the City and warned that failure to bring the Premises into compliance within 30 days could result in the City taking action to address the Code violations at his expense. *Id.* The Department reiterated its warning regarding the accrual of fines and reinspection fees. *See* Final Warning at 1-2 []. [Landowner] again failed to remedy the Code violations. Complaint at 3, ¶ 10 [].

[Landowner] did not file an administrative appeal from either of the notices of violation. *See* Complaint at 3, ¶ 13 []. In April 2019, the City filed the Complaint against [Landowner] seeking injunctive relief and requesting that the trial court order [Landowner] to pay a fine of $2,000 for each day the Premises remained out of compliance with the Code.[] Complaint at 4-5 []. The City averred that, as of the date of filing, [Landowner] had accrued $1,138,000 in cumulative statutory fines for the Code violations identified in the Notice. Complaint at 5, ¶ 23 []. Further, the City sought $2,400 in reinspection fees, plus any additional fees it might incur conducting subsequent reinspections of the Premises in accordance with Section A-901.12.2 of the Code, Phila., Pa., Code § A-901.12.2. Complaint at 5-6, ¶¶ 25-28 []. As required by Rule 1018.1 of the Pennsylvania Rules of Civil Procedure [Pa.R.Civ.P. 1018.1], the Complaint was endorsed with a Notice to Defend advising [Landowner] to consult an attorney and providing contact information for the Philadelphia Bar Association's lawyer referral and information service. Notice to Defend [].

In April 2019, the trial court issued a Rule to Show Cause with a return/hearing date of July 2, 2019. Rule to Show Cause, 4/3/19 []. The trial court stated that the purpose of the hearing was to determine whether to enter any orders against [Landowner] for failure to maintain the Premises in accordance with the Code. *Id.* The trial court advised [Landowner] that failure to attend the July 2, 2019

3

hearing could result in the imposition of fines or the entry of other appropriate orders. *Id.*

[Landowner] did not respond to the Complaint. *See* Trial Ct. Op. at 2 []. On May 1, 2019, despite the trial court's scheduling of a hearing, the City sent [Landowner] a 10-day notice of praecipe for default judgment via certified mail, again suggesting that [Landowner] retain counsel and providing contact information for the Philadelphia Bar Association's lawyer referral and information service.[] *See* Praecipe for Default Judgment at 1 [] (citing Pa.R.C[iv].P. [] 237.1(2)); Notice of Praecipe for Default Judgment []. [Landowner] still did not respond to the Complaint.

On May 14, 2019, the City filed a praecipe for entry of judgment by default against [Landowner] in the amount of $1,138,000, and the trial court entered the judgment the same day.[] Praecipe for Default Judgment at 1 []; Trial Ct. Docket at 2 []. The prothonotary for the trial court provided notice to the parties of the entry of the default judgment in accordance with Rule 236(a)(2) of the Pennsylvania Rules of Civil Procedure, Pa.R.C[iv].P. [] 236(a)(2). *See* Trial Ct. Docket at 2 [].

On July 2, 2019, the trial court held the hearing on the Rule to Show Cause. Transcript of Testimony (T.T.), 7/2/19 at 7 []. [Landowner's] counsel stated that he had just learned of the entry of the default judgment against his client one day prior, on July 1, 2019, and counsel for the City agreed to a continuance to permit [Landowner's] counsel to file the [petition to open default judgment ([Petition[]). *Id.* at 4 []. [Landowner's] counsel filed the Petition the following day. Trial Ct. Docket at 2 []; Petition at 1-7, 7/3/19 []. [Landowner] provided an affidavit in support of the Petition, acknowledging that he received the City's notice of praecipe for default judgment on or about May 1, 2019. [Landowner] Affidavit at 1, ¶ 4 []; *see also* Petition at 2, ¶ 6 []. [Landowner] further averred that, sometime thereafter,[] he telephoned and spoke with Brendan Philbin, Esquire (Attorney Philbin)[] to discuss his concerns about the notice. [Landowner] Affidavit at 1, ¶ 4 []. [Landowner] alleged that Attorney

4

Philbin informed him he "would be ok" if he "continued to act quickly" to bring the Premises into compliance and if he "had permits in place by the . . . July 2, 2019 hearing[.]" *Id.* at 2 []. [Landowner] further attested that Attorney Philbin failed to explain the risk of a default judgment or to advise him to retain counsel and to respond immediately to the Complaint. *Id.* at 2, ¶ 6 []. [Landowner] asserted that he was not aware that a default judgment was entered on May 14, 2019, although he does not specifically deny receipt thereof. *Id.* at 2, ¶ 8 []. [Landowner] attested that during the week of June 11, 2019, he secured counsel to represent him at the July 2, 2019 hearing. *Id.* at 2, ¶ 9 []. [Landowner] averred that he did not inform his counsel of the default judgment at that time because he was not aware of it. *Id.*

On July 31, 2019, the trial court entered an order denying [Landowner's] Petition. Trial Ct. Order, 7/31/19 []. [Landowner] filed an appeal from that order.

*Neely I*, slip op. at 2-6 (citations and footnotes omitted).

Ultimately, we affirmed the trial court's denial of the Petition and entry of default judgment, but vacated the $1,138,000 judgment award and remanded for further proceedings to determine an appropriate fine. *Neely I*, slip op. at 1. In explaining the decision to remand we stated, in relevant part:

Facially, the amount of the fine here is so large that it could well shock the conscience of a court. The City was authorized to impose a fine of $150 to $2,000 per day; it imposed the maximum daily fine allowable, and it did so for 669 days as of the date the Complaint was filed and sought ongoing fines to an undetermined date, without providing any evidence of the propriety or necessity of such a massive fine. Even though [Landowner] failed to establish facts entitling him to open the default judgment, we conclude that, at a minimum, the trial court was required to analyze separately the issues bearing on the propriety of the fine amount, taking evidence if necessary.

\* \* \* \*

5

[A]lthough the City's praecipe for entry of the default judgment stated a specific dollar amount, its damages were not in fact reduced to a sum certain, nor did the Complaint specify a definite fine. Therefore, the trial court was required to conduct a separate proceeding to determine the proper amount of the judgment. Accordingly, we vacate the trial court's judgment only as to the amount of the fine, and we remand this matter to the trial court for consideration of the appropriate amount of the fine to be imposed.

*Neely I*, slip op. at 17-19 (citations omitted).

On remand, the trial court held an evidentiary hearing on March 8, 2022, to assess damages. Reproduced Record (R.R.) at 56a. Landowner, through his counsel, did not argue the facts of the case and argued only the amount of the fine. *Id.* at 91a. In an order dated April 19, 2022, the trial court found in favor of the City and imposed a reduced fine of $113,800, which is 10% of the maximum fine amount available under the Code. *Id.* at 144a. Landowner then filed the instant appeal to this Court.[3]

Landowner first argues that the City exceeded its authority under Section 17 of the First Class City Home Rule Act (Home Rule Act),[4] and the

---

[3] "Whether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

[4] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §13131. Section 17 of the Home Rule Act states, in pertinent part:

Ordinances, rules and regulations adopted under the authority of this act or under the provisions of any charter adopted or amended hereunder shall be enforceable by the imposition of fines, forfeitures and penalties, not exceeding two thousand three hundred dollars ($2,300), and by imprisonment for a period not exceeding ninety days. Notwithstanding the other provisions of this section, a city of the first class may increase any fine, forfeiture or penalty authorized

6

Philadelphia Home Rule Charter[5] in imposing a total fine exceeding $2,300. Appellant's Brief at 7. Section A-601.3 of the Code describes violations constituting Class III offenses and mandates that such violations shall be "subject to the maximum fine set forth in subsection 1-109(3) of the [Code]." Code §A-601.3. Section 1-109(3)(e) of the Code provides for a maximum $2,000 fine for each Class III offense committed on or after January 1, 2009. Code §1-109(3)(e). Section A-601.4 of the Code further states: "Each day that a violation continues after issuance of a notice or order shall be deemed a separate offense." Code §A-601.4; *see also City of Philadelphia v. DY Properties, LLC,* 223 A.3d 717, 724 (Pa. Cmwlth. 2019).

This Court has consistently upheld the cumulative nature of Code violations. *DY Properties LLC*, 223 A.3d at 720 (affirming a total fine of $243,200 resulting from daily fines for noncompliance); *JPR Holdings, LLC v. City of Philadelphia* (Pa. Cmwlth., No. 820 C.D. 2019, filed January 8, 2021) slip op. at 12-

---

under this section, provided that the increase does not exceed four hundred dollars ($400) in any calendar year and the total amount of the fine, forfeiture or penalty does not exceed two thousand dollars ($2,000).

[5] Section 1-100 states, in relevant part:

The City shall have the power to enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers; and such ordinances, rules and regulations may be made enforceable by the imposition of fines, forfeitures and penalties not exceeding three hundred dollars and by imprisonment for a period not exceeding ninety days or by such greater fines, forfeitures and penalties and periods of imprisonment as the General Assembly of the Commonwealth of Pennsylvania may from time to time authorize.

Philadelphia Home Rule Charter art. I, §1-100. The three hundred dollar ($300) maximum limit on fines, forfeitures, and penalties was increased to $2,300 by the General Assembly effective November 30, 2004. Act of November 30, 2004, P.L. 1523, No. 193.

7

13 (finding no abuse of discretion by the trial court in imposing $52,000 in total fines where a maximum of nearly $800,000 in fines was authorized).[6] Further, in *City of Philadelphia v. Broad & Olney Alliance, LP*, this Court found "no abuse of discretion on the part of the trial court in imposing the $26,850 aggregate fine for 179 days of Class III Code violations." *City of Philadelphia v. Broad & Olney Alliance, LP* (Pa. Cmwlth., No. 49 C.D. 2019, filed July 14, 2020) slip op. at 10-11. This Court observed that "had the trial court imposed the $2,000 daily fine permitted by the Code for Class III violations, [Broad and Olney] could have faced a fine of $358,000." *Id.*, slip op. at 11 n.7.

Here, Landowner was fined for repeated Class III offenses under the Code. *Neely I*, slip op. at 3 n.5. Each Class III offense carries a maximum fine of $2,000. *Id.*; Code §1-109(3)(e). The Code provides that each day of noncompliance is a new violation. Code §A-601.4. As emphasized by the trial court, the City has an interest in protecting neighbors and the public from "recalcitrant property owners like [Landowner] who refuse to correct dangerous Code violations over a long period of time." *See* Trial Court Opinion, 6/29/22, at 6, R.R. at 173a. Based on the plain language of the Code and applicable case law, we discern no error in the trial court's imposition of cumulative fines.

Landowner further argues that the $113,800 amount of his fine violates constitutional prohibitions against excessive fines in the Eighth Amendment of the United States Constitution[7] and article I, section 13 of the Pennsylvania

---

[6] *See* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

[7] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The

8

Constitution.[8]  Appellant's Brief at 12.  As summarized by this Court in *City of Philadelphia v. Joyce*:

> "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *see also Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279-80 (Pa. 2014) ("[b]y its plain language, the [second] clause employs a concept of proportionality; the difficulty is articulating a principle by which to measure excessiveness or proportionality").  As our Supreme Court has explained:
>
>> The primary purpose of a fine or a penalty is twofold: to punish violators and to deter future or continued violations.  Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.
>
> *Eisenberg*, 98 A.3d at 1283 (quoting *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)) (brackets omitted).  Further, "[our Supreme Court] and [this] Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Eisenberg*, 98 A.3d at 1281.  Thus, a fine "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."

---

[E]ighth Amendment is made applicable to the states through the Fourteenth Amendment." *Commonwealth v. Real Property & Improvements Commonly Known as 5444 Spruce Street*, 832 A.2d 396, 399 (Pa. 2003); U.S. Const. amend. XIV.

[8] Pa. Const. art. I, §13.  Article I, section 13 states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."  Our Supreme Court held that article I, section 13 of the Pennsylvania Constitution is coextensive with the Eighth Amendment of the United States Constitution.  *5444 Spruce Street*, 832 A.2d at 399.

> *Bajakajian*, 524 U.S. at 334.  Moreover, a fine may be
> deemed unconstitutionally excessive where "the amount
> . . . [is] so great as itself to be confiscatory and beyond the
> bounds of all reason and justice." *Church*, 522 A.2d at 34.

*City of Philadelphia v. Joyce* (Pa. Cmwlth., No. 896 C.D. 2019, filed Dec. 4, 2020) slip op. at 8-9.

In *DY Properties, LLC*, this Court held that a cumulative fine of $243,300 was constitutional and noted that

> the fines issued against DY were [] imposed per day based
> upon repeated daily violations of numerous Code
> provisions.   The violations pertained to potentially
> hazardous conditions on the [p]roperty which remained for
> approximately eight months, despite City demands to
> remediate.  Thus, the significant fine was an accumulation
> of penalties arising solely from DY's repeated and
> ongoing failure to correct the violations.

223 A.3d at 723 n.12.  This Court in *Joyce* similarly held that cumulative fines under the Philadelphia Code totaling $25,000 were not unconstitutionally excessive where the City assessed the aggregate fine based on uncontested and longstanding Code violations stemming from the failure to remediate dangerous property conditions despite repeated notices and warnings from the City.  *Joyce*, slip op. at 11-12.

We conclude the same here.  Landowner's original fine amount of $1,113,800 accrued over the course of 669 days at $2,000 per Class III Code violation, with each day constituting a separate violation.  *Neely I*, slip op. at 2-6 n.6; *see also* Code §§1-109(3)(e); A-601.4.  Landowner failed to file an administrative appeal of either notice issued by the City or similarly failed to respond to the City's Complaint.  *Neely I*, slip op. at 3-4.  Landowner had 669 days of noncompliance and took no actions to appeal or notify the City of any steps taken to fix the dangerous conditions on the Premises to comply with the Code.  Although the reduced fine of $113,800 imposed here is clearly significant, that amount is a direct result of

10

Landowner's ongoing Code violations and failure to bring the Premises into compliance with the Code. Because the fine was imposed as a result of Landowner's repeated failures to correct the potentially hazardous conditions on the Premises, we discern no error in the trial court's order and reject Landowner's assertion that the fine is unconstitutional.

Finally, and in further support of his argument that the fine is unconstitutional, Landowner asserts that the trial court's fine is "grossly out of proportion to the value of the property which is the subject of the violations." Appellant's Brief at 16. We find this argument to be without merit. As this Court has previously explained, the value of the noncompliant property is not a consideration of the trial court in considering fines for violations of the Code. *See Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994); *see also City of Philadelphia v. Okamoto* (Pa. Cmwlth., No. 51 C.D. 2019, filed April 29, 2020) slip op. at 14; *City of Philadelphia v. RB Parking, LLC* (Pa. Cmwlth., No. 515 C.D. 2019, filed July 16, 2020) slip op. at 13-14.

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
                    v.                  : No. 480 C.D. 2022
                                        :
Bryan Neely,                            :
                                        :
                    Appellant           :

# **O R D E R**

AND NOW, this 25th day of March, 2024, the Order of the Philadelphia County Court of Common Pleas dated April 19, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge