IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 1711 C.D. 2024 |
| | : | |
| Janice Hammond, | : | Submitted: March 3, 2026 |
| Appellant | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE STELLA M. TSAI, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                                    FILED: April 6, 2026

This case returns to us after remand. In *Hammond v. City of Philadelphia*, 322 A.3d 971 (Pa. Cmwlth. 2024) (*Hammond I*), this Court remanded the case to the Court of Common Pleas of Philadelphia County (trial court) with instructions to recalculate the appropriate fines and costs after reconsidering aggravating and mitigating factors supported by the evidence. On November 13, 2024, the trial court issued a new order imposing a statutory fine for prolonged violations of the Philadelphia Fire Code (Fire Code)[1] in the amount of $100,000. Janice Hammond (Hammond) now appeals from that order, *pro se*, arguing that the fine was excessive in violation of the United States and Pennsylvania Constitutions. Upon review, we affirm.

---

[1] The Fire Code is found in Title 4 of the Code. *See* City of Phila., Pa. Code (Phila. Code), Title 4, Subcode F (2020).

# I. **Factual and Procedural Background**[2]

Hammond owns a three-unit residential rental property located at 908 Duncannon Avenue in Philadelphia (City). In June 2017, the City's Department of Licenses and Inspections (Department) found the property infested with insects and generally unsanitary, and that Hammond illegally operated the property as a rooming house. Accordingly, the City issued a "cease operations" notice. Hammond never corrected the issues, and the notice remained in place.

On or about April 29, 2019, the Department inspected the property and discovered that tenants were again living at the property. In addition, the Department found the fire alarm system was inoperable and had not been inspected. The Department issued a notice of violation citing the Fire Code. The notice informed Hammond that daily fines up to $1,300 could be imposed. Additionally, the notice informed Hammond that failure to comply would result in an automatic assessment of reinspection fees.

On May 1, 2019, upon reinspection, the Department found that the violations had not been corrected. Thereafter, on June 4, 2019, the Department again reinspected the property, found the fire alarm system remained inoperable, and issued a second "cease operations" notice. Hammond did not appeal these notices.

In July 2021, the City commenced this action seeking statutory fines for Hammond's failure to abate the ongoing Fire Code violations. The trial court held hearings in February and March 2022.

---

[2] This Court previously outlined the facts and procedural posture underlying this matter in *Hammond I*, and the background summation contained in the instant opinion derives in part from the detailed account of the facts and procedure of the underlying matter, which account is incorporated herein by reference. *See Hammond I*, 322 A.3d at 972-74.

2

At the February 2022 hearing, Hammond testified that she was a landlord of several properties and was familiar with the City's requirements regarding the compliance of properties. (Notes of Testimony, 2/24/22, 22-27.) She also admitted that most of her tenants were "on disability." *Id.* at 26-27. She further described several of her buildings as vacant and at least one as not "rehabbed." *Id.* Additionally, she claimed that she "did not know when [the fire alarm] was not working" and that she would have "sent someone to have it done." *Id.* at 29. Hammond resolved the fire alarm issues in September 2021. *Id.* at 31.

Inspector Natasha Lee then testified that May 2019 was not the first time the City had vacated the premises. *Id.* at 10-12. The premises had been subject to a prior cease operations order in 2017 because it was unsanitary, infested with insects, and operating as an illegal rooming house. *Id.* Hammond did not fix these initial violations before allowing tenants to reside in the property again. *Id.* Inspector Lee testified that Hammond did not comply with the 2017 order until September 15, 2021, when she finally resolved the 2019 Fire Code violations. *Id.* at 31.

At the close of the hearing, the trial court informed the parties that it would continue the matter for 30 days and asked the Department to reinspect the property for compliance.

At the March 2022 hearing, the City informed the trial court that it had reinspected the property and found that the fire alarm system was still inoperable. Inspector Lee inspected the premises again on March 8, 2022, and found that the fire alarm panel displayed an inoperable signal and that there was one fire extinguisher with current tags. (Notes of Testimony, 3/24/22, 6.) The inspection also revealed that the property was severely neglected inside. Inspector Lee described large holes in the walls, a collapsing basement ceiling, exposed ceiling joists, and multiple electrical

defects. *Id.* She identified for the trial court photographs from the inspection showing buckling wooden beams, exposed wiring, and piles of debris. Fearing a potential risk of collapse inside the home, she immediately requested an emergency services referral so that the Department's Contractual Services Unit (the unit that deals with potentially or imminently dangerous properties) could ensure that there was no danger of collapse. *Id.* at 9.

Supervisor Thomas Rybakowski with the Contractual Services Unit testified that a site inspector attempted to inspect the premises on March 9, 2022. *Id.* at 12. However, the site inspector was turned away from the subject premises by two men cleaning debris. *Id.* On March 22, 2022, Inspector Rybakowski called Hammond to schedule an interior inspection. *Id.* at 13. On that phone call, Hammond insisted that "because during the [March 8, 2022] inspection with Inspector Lee, she did not fall through the floor . . . the property, in her estimate, was safe." *Id.* L&I was unable to schedule another interior inspection because Hammond refused to grant them access. *Id.*

Following these hearings, the City requested that the trial court impose fines and fees totaling $1,028,600, for violations that persisted 869 days. Initially, the trial court issued a "final order" imposing fines and fees as requested by the City. Hammond sought reconsideration, which the trial court granted and issued an amended "final order" imposing $250 in fines and fees. *See* Trial Ct. Order, 4/6/22, at 2 (unpaginated) (First Amended Order).

The City appealed to this Court, alleging that the nominal fine imposed by the trial court was manifestly unreasonable and constituted an abuse of discretion. In *Hammond I*, this Court agreed that the trial court should have considered both mitigating and aggravating factors, which it had failed to do. We explained:

4

For the violations at issue herein, the Philadelphia Code permits daily fines up to $1,300. *See* Phila. Code § 1-109. These violations persisted for 869 days. Thus, the maximum fine authorized by the Philadelphia Code is $1,129,700. Instead, the trial court imposed merely $250 in fines and costs for safety violations that persisted more than two years. It is clear that the trial court failed to consider the gravity of these violations. This is an attached building in a busy residential and commercial district; there is a convenience store attached to Hammond's property. Her failure to bring this property into compliance with the Fire Code posed a danger to the surrounding community.

However, it is not merely the *de minimis* amount. We discern a further abuse of discretion in the trial court's reliance on mitigating factors that were clearly erroneous. According to the trial court, "although [Hammond], an elderly woman, was in fact guilty of these violations, the penalty should be nominal ...." Trial Ct. Op. at 4. The trial court relied on three mitigating factors: (1) notice of the violations was mailed to the wrong address; (2) the property was vacant for several years; and (3) the violations were remedied in September 2021 (prior to the hearings). *Id*.

Hammond testified at the first hearing that the City had mailed notices of the fire safety violations to a post office box that she had not used in over 20 years. N.T. Hr'g, 2/24/22, at 19. She also testified to her correct address and that, had she been aware of the violations sooner, she would have reacted immediately. *Id*. at 18. However, this testimony was impeached. At the second hearing, the City introduced evidence documenting that it had sent multiple notices to Hammond, including to her "correct address." *See* N.T. Hr'g, 3/24/22, at 9-10.

While the trial court correctly observed that the property was vacant for several years, that observation was hardly a mitigating factor. The property was vacant because the City had issued a notice for Hammond to cease operations at the property, thus forcing Hammond's tenants to vacate the

property more than a month after the City first informed Hammond of the fire safety violations. Further, this is an attached building located next to a convenience store. Thus, the property's vacancy did little to ameliorate the danger to the surrounding neighborhood.

Finally, Hammond's apparent remediation of the fire safety violations, in September 2021, occurred more than two years after Hammond first learned of the violations. That simply cannot be a mitigating factor. Moreover, upon a subsequent visit to reinspect the property in March 2022, the fire alarm system remained inoperable. *See id*. at 6.

*Hammond I*, 322 A.3d at 975-76.

Because the trial court did not consider the gravity of the violations, and because the $100 fine and $250 reinspection fee failed to adequately punish Hammond for her persistent failure to remediate Fire Code violations at her property, we remanded to the trial court to assess a new fine.

On remand, the trial court held a new hearing on November 12, 2024, during which Hammond was represented by counsel. The trial court reviewed the evidence from the previous hearings, and noted that the condition of the building had not changed since the original trial in 2022.

After the hearing, the trial court imposed a fine of $100,000 and $300 in reinspection fees. The trial court explained that Hammond's failure to maintain adequate fire protection for her building posed a risk to the occupants of the subject premises, those inhabiting the adjoining properties, and the surrounding neighborhood.

## II.    Issues

On appeal,[3] Hammond challenges the reassessed fine as unconstitutionally excessive under the Eighth Amendment's Excessive Fines Clause[4] and article I, section 13 of the Pennsylvania Constitution[5] because it was grossly disproportionate to the violation.  She also argues that her violation of the Fire Code qualifies as a *de minimis* infraction under Section 312 of the Crimes Code, 18 Pa. C.S. § 312,[6] arguing that the abandoned status of the building was a sufficient mitigating

---

[3] Generally, a trial court's assessment of a civil penalty is reviewed for an abuse of discretion. *See Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994).  An abuse of discretion is shown "when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Blair v. Zoning Hearing Board of Township of Pike*, 676 A.2d 760, 761 (Pa. Cmwlth. 1996).

[4] U.S. Const. amend. VIII ("[e]xcessive bail shall not be required, nor excessive fines imposed . . . ").  "The Eighth Amendment is made applicable to the states through the Fourteenth Amendment[, U.S. Const. amend. XIV]." *Commonwealth v. Real Property & Improvements Commonly Known as 5444 Spruce St.*, 832 A.2d 396, 399 (Pa. 2003) (citing *Robinson v. California*, 370 U.S. 660, 664 (1962)).

[5] PA. CONST. art. I, § 13.  Article I, section 13 of the Pennsylvania Constitution is coextensive with the Eighth Amendment.  *5444 Spruce St.*, 832 A.2d at 399.

[6] Section 312 of the Crimes Code provides:

> General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
>
> (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

**(Footnote continued on next page…)**

7

factor to warrant a reduced fine. Lastly, she contends that her counsel was "ineffective" for failing to raise the *de minimis* infraction defense before the trial court.

### III. Analysis

The primary purposes of a fine or penalty are to (1) "punish violators" and (2) "deter future or continued violations." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014). Pennsylvania courts have rejected any requirement that a fine be strictly proportional to the harm actually caused. *Id.* at 1281. Instead, our Supreme Court has recognized that because fines serve an important deterrent purpose, "the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution." *Id.* at 1283.

Moreover, this Court has approved the imposition of daily fines for excessive periods of noncompliance. *See, e.g., Woodruff v. Lower Southampton Township*, 516 A.2d 834 (Pa. Cmwlth. 1986) (upholding $100 per day fine, totaling $157,600, for operating junkyard in violation of zoning ordinance); *East Penn Township v. Troxell* (Pa. Cmwlth., No. 875 C.D. 2011, filed Apr. 5, 2012), 2012 WL 8681524 (unreported)[7] (upholding $500 per day, per violation fine, totaling $624,500,

---

> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa. C.S. § 312. This section was enacted to remove petty infractions from the category of criminal conduct; its application is limited to situations where there was no harm done to either a victim or society. *Scurfield Coal, Inc. v. Commonwealth*, 582 A.2d 694 (Pa. Cmwlth. 1990).

[7] This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). The unreported cases cited herein are cited for their persuasive value.

for parking commercial vehicles, raising pigs, storing junk, and impermissibly operating a trucking terminal); *JPR Holdings LLC v. City of Philadelphia* (Pa. Cmwlth., No. 820 C.D. 2019, filed Jan. 8, 2021), (2021 WL 71711) (unreported) (approving more than $50,000 in fines for violations that persisted more than two years); *City of Philadelphia v. DY Properties, LLC*, 223 A.3d 717, 723-25 & n.12 (Pa. Cmwlth. 2019) ($243,200 fine for fire code violations). Substantial fines are even more appropriate where the underlying violations created an "imminent safety hazard." *See, e.g.*, *City of Philadelphia v. Neely* (Pa. Cmwlth., No. 480 C.D. 2022, filed Mar. 25, 2024) (unreported) (*Neely II*) 2024 WL 1251373 (approving $113,800 in fines for property owner's "repeated failures to correct the potentially hazardous conditions").

In arriving at an appropriate penalty, the trial court should weigh all aggravating and mitigating factors. *Lal*, 643 A.2d at 1175. "The amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish." *City of Philadelphia v. Neely* (Pa. Cmwlth., No. 1293 C.D. 2019, filed Aug. 30, 2021) (*Neely I*), slip op. at 15, 2021 WL 3853060, at *7 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (cleaned up)).

A. *Excessiveness of the Fine*

To meet her burden of showing the fine was unconstitutionally excessive, Hammond had to demonstrate that the fine was "grossly disproportional" to the offense. *Eisenberg*, 98 A.3d at 1281; *see also Bajakajian*. Factors relevant to determining the gravity of the offense include: "the penalty imposed as compared to the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and, the harm resulting from the crime charged." *5444 Spruce St.*, 832 A.2d at 402.

9

Similarly, this Court's abuse-of-discretion review also compares the amount of a penalty against the gravity of the offense. In determining the amount of a penalty, a trial court is tasked with weighing mitigating and aggravating factors. *Lal*, 643 A.2d at 1175. These factors may include: the history and character of the defendant; the nature and circumstances of the offense; the defendant's attitude or lack of remorse; and whether the penalty is below the statutory maximum. *Id.* A penalty that is within the statutory limits is presumed to not be an abuse of discretion unless it is "manifestly excessive so as to inflict too severe a punishment." *Id.*

a) Aggravating Factors

Here, we find that the $100,000 fine was not so grossly disproportional to the offense as to be unconstitutional or an abuse of discretion.

First, we find that the trial court properly considered the nature and circumstances of the offense. The key aggravating factor supporting the fine was the risk to her tenants and the public of an uncontrolled fire that may spread to neighboring properties. The goal of the Fire Code is to prevent fires from causing widespread property destruction, injury, and loss of life. Fire Code § F-101.3. The City established that the property is connected to a neighboring convenience store, is surrounded by row homes, and is around the corner from a playground. Suffice it to say, a fire that starts at one property and spreads to the surrounding properties could be catastrophic.

The trial court also considered that the length of time out of compliance is a critical factor because daily fines, such as those under the Philadelphia Code, are inherently scaled to the gravity of the offense. *Epstein*, 335 A.3d at 420; *Eisenberg*, 98 A.3d at 1287 n.24; *DY Properties*, 223 A.3d at 723 n.12. Indeed, in *Hammond I*, we already ruled that the extended length of Hammond's noncompliance was an aggravating factor. *Hammond I*, 322 A.3d at 976.

10

In *DY Properties*, this Court concluded that the trial court acted within its discretion when it imposed a $243,200 fine for significant Fire Code violations because, like Hammond, the property owner continually failed to remediate his violations. 223 A.3d at 723-25. There, the evidence established that, from April 13, 2018, to December 20, 2018, the Department attempted numerous times to require the landowner to remediate its violations, which included combustible waste accumulation on the exterior of the building; combustible debris accumulation in the building's interior; an inoperable sprinkler system; lack of certification evidencing that the fire suppression system was tested and in good working order; and missing downspouts. *DY Properties*, 223 A.3d at 719. Despite the issuance of a violation notice, the landowner permitted its tenant to occupy the property. *Id.* at 720. Even after the Department issued its second and third violation notices, and then subsequently posted a cease operations order notice, the tenant continued to operate the auto repair business at the property, such that the City was forced to order those present to vacate the property. We held that, although the trial court's fine was significant, the fine was the direct result of the landowner's ongoing violations and failure to remediate. *Id.* at 725. We explained that "the significant fine was an accumulation of penalties arising solely from [the landowner's] repeated and ongoing failure to correct the violations." *Id.* at 723 n.12. *See also Neely II* (affirming a trial court order imposing a $113,800 aggregate fine, assessed pursuant to Sections 1-109 and Phila. A-601.4 of the Code, based on the landowner's repeated and uncorrected violations over a period of 669 days).

Here, as in *DY Properties*, the only reason the fine grew so large was because Hammond refused to fix her fire alarm during an extended period of 869 days. Accordingly, we find that the trial court gave appropriate weight to the duration of the violations.

11

Additionally, the City demonstrated Hammond's pattern of dilatory conduct. In 2017, the City discovered that the property was unsanitary and infested with insects, and that Hammond was operating the property illegally as a rooming house without proper zoning. The tenants were promptly vacated, but Hammond unlawfully allowed tenants back into the building without remedying the violations. These violations were not resolved until September of 2021, after the instant Fire Code violations and a second "cease operations" notice. This means that at the time of the 2019 "cease operations" notice, Hammond was illegally housing tenants in an unsanitary, bug-infested building with no working fire alarm.

Finally, it is relevant that the fine is a mere fraction of the potential statutory maximum. For Hammond's violations, the Philadelphia Code permits daily fines up to $1,300. *See* Phila. Code § 1-109. These violations continued for 869 days before the complaint was filed. The fine on remand was less than 10% of the statutory maximum of $1,028,300 that City Council has deemed appropriate for this type of violation, despite years of noncompliance by Hammond. We can discern no abuse of discretion by the trial court, particularly when it showed Hammond significant leniency. *See Lal*, 643 A.2d at 1175 ("[I]f a sentence imposed is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.").

b) Mitigating Factors

Hammond contends that the trial court failed to take into account the minor nature of the infraction. She argues that under Section 312 of the Crimes Code, her situation qualifies as a *de minimis* infraction because the non-working fire alarm system in an abandoned building does not pose a significant risk or harm, as the property was unoccupied. She reasons that since the building was not in use, the risk

12

associated with a non-working fire alarm system was greatly reduced. We disagree that the trial court erred in this regard.

First, this Court has held that Section 312 of the Crimes Code concerns the dismissal of criminal prosecutions, not civil cases regarding administrative codes. *Mitchell v. Pennsylvania Liquor Control Board*, 476 A.2d 479, 481 (Pa. Cmwlth. 1984) (holding that Section 312 of the Crimes Code does not apply to Liquor Code citation because it is a civil case); *Commonwealth v. One 1983 Toyota Corolla seized from Cardamone*, 578 A.2d 90, 92 (Pa. Cmwlth. 1990) (holding that Section 312 of the Crimes Code has no application to a forfeiture proceeding). This matter concerns continuing violations of the Fire Code, and therefore, the *de minimis* defense is not applicable.

Moreover, Hammond's argument that the infraction was *de minimis* because the building was unoccupied or abandoned for the years she was out of compliance is unavailing. The record establishes that, in fact, Hammond did have tenants in the building without a working fire alarm, until her refusal to comply with the Fire Code forced the City to issue a "cease operations" order. She ignores that, until the Department issued a "cease operations" notice and vacated the building, she was illegally renting the property to tenants without a functioning fire alarm system. Even after temporarily vacating the building upon the first "cease operations" order, she did not make the repairs and further disregarded the safety of tenants by returning them to the building with the dangerous conditions. Most importantly, however, her argument ignores the risk of an uncontrolled fire at her property spreading to surrounding homes and businesses. Therefore, despite the eventual unoccupied or abandoned status of the building, the danger of fire remained an active threat to all that surrounded her property for over two years.

13

c) Ineffective Assistance of Counsel

Hammond next claims that her former attorney provided her with ineffective assistance of counsel because he did not raise the *de minimis* defense on her behalf.  As we just explained, Section 312 of the Crimes Code has no application to this case, and that, in any event, the infraction was not *de minimis*.  Therefore, he was not ineffective for failing to raise it.  Moreover, "[t]he law is well settled that there is no right to counsel in civil cases." *V.S. v. Department of Public Welfare*, 131 A.3d 523, 529 (Pa. Cmwlth. 2015).  Therefore, we find this issue to be without merit.

## IV.   Conclusion

Hammond has not met her heavy burden of establishing that the assessed fine was either unconstitutionally excessive or an abuse of discretion.  The Fire Code requires that buildings have working fire alarms to protect the safety of the public.  The record establishes Hammond's ongoing failure to address the Code violations for 869 days.  On remand, the trial court acted well within its constitutional and discretionary bounds in assessing a $100,000 fine.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia        :
                                  :
         v.                 :    No. 1711 C.D. 2024
                                  :
Janice Hammond,        :
             Appellant    :

## *<u>ORDER</u>*

AND NOW, this 6th day of April, 2026, the November 13, 2024 order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge